172

[No. 40392-7-II.   Division Two.   December 2, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. MARK DAVID
GRIMES, *Appellant*.

174

*Thomas E. Doyle*, for appellant.

*Jon Tunheim, Prosecuting Attorney*, and *John C. Skinder, Deputy*, for respondent.

¶1 VAN DEREN, J. — Mark David Grimes appeals a sentence enhancement imposed for conviction of delivering methamphetamine within 1,000 feet of a school bus route stop and his bail jumping conviction. He argues that we should vacate the enhancement portion of his sentence based on a *Bashaw*[1] instructional error, that the evidence is insufficient to support his bail jumping conviction, and that his trial counsel rendered ineffective assistance.[2] The State responds that Grimes cannot challenge the *Bashaw* instruction for the first time on appeal because he fails to establish that it was a manifest error of constitutional magnitude. We hold that Grimes may not raise the issue of instructional error under *Bashaw* for the first time on appeal under the facts of this case, that the evidence was sufficient to support his bail jumping conviction, and that his counsel was not ineffective. We affirm.

## FACTS

¶2 In the early morning of June 27, 2009, city of Lacey police used informant Michael Santos to conduct a controlled buy of methamphetamine from Grimes in a Safeway store parking lot. Grimes arrived in a car driven by his girl friend, Johanna Crandell. When Santos approached the passenger side of the car, where Grimes was seated, Grimes handed Santos a plastic sandwich bag containing methamphetamine and Santos handed Grimes $100 of "prerecorded buy money." Report of Proceedings (RP) at 92.

---

[1] *State v. Bashaw*, 169 Wn.2d 133, 234 P.3d 195 (2010).

[2] Grimes raises additional, mostly factual, issues in his statement of additional grounds for review, none of which have merit, but which we briefly address. RAP 10.10.

¶3 Santos walked away from the car and pulled up his sweatshirt hood, signaling the police that the drug buy had occurred. Police immediately stopped the car, arrested its occupants, and recovered the methamphetamine and purchase money. After waiving his *Miranda*[3] rights, Grimes talked with police, confessed that he had delivered methamphetamine to Santos, and indicated that he would work with police and that "he was willing to order up from his supplier to avoid going to jail." RP at 221.

¶4 The State charged Grimes by first amended information with unlawful delivery of methamphetamine within 1,000 feet of a school bus route stop. On October 14, 2009, the trial court granted Grimes's motion for a continuance. Grimes signed an agreed order of trial continuance and agreed to appear at a December 2 status conference hearing and at trial scheduled for December 7. When Grimes did not appear in court for the scheduled status conference on December 2, the trial court issued a bench warrant for his arrest. Following his arrest on the warrant, the State filed a second amended information, charging him with unlawful delivery of methamphetamine within 1,000 feet of a school bus route stop (count 1) and bail jumping (count 2).

¶5 When the trial finally commenced during February 2010, Santos testified that he had known Grimes for approximately one year before the June 27, 2009, drug delivery and that their relationship was primarily based on using methamphetamine together. Santos identified Grimes in open court as the person who had sold him the methamphetamine on June 27; Santos also identified Grimes using Grimes's booking photograph. Lacey Police Department Detective David Miller also identified Grimes in open court as the individual that police had arrested following Santos's controlled buy on June 27.

¶6 Crandell testified that after she was subpoenaed to testify in Grimes's trial, she had left Washington and

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

travelled to Arizona with Grimes. Crandell identified Grimes in open court, testifying that she had been in a relationship with him for the past four years and wanted to continue that relationship. She further testified that on June 27, 2009, she had driven Grimes to the Safeway parking lot to collect money that Santos owed her;[4] that Santos gave her $100; and, for the first time, she claimed that she gave Santos a bag of methamphetamine that she had found among the items in her car. Crandell also explained that she had pleaded guilty to conspiracy to deliver methamphetamine based on the June 27 delivery to Santos and that her court-imposed conditions included that she not communicate with Grimes.

¶7 Evidence related to the sale of drugs within 1,000 feet of two school bus route stops included the testimony of the North Thurston Public Schools transportation director, Eric Weight, who testified that there were two separate school bus route stops within 1,000 feet of the Safeway store where the June 27, 2009, methamphetamine delivery took place.

¶8 To prove the bail jumping charge, the State called a Thurston County senior deputy prosecutor, David Bruneau, to introduce the October 14, 2009, agreed order continuing Grimes's trial on the methamphetamine delivery charge. Bruneau directed the jury to the language on the order that read, "This order is valid only if personally signed by the defendant." Ex. 11 (capitalization omitted). The order was signed by Grimes, his defense counsel, the deputy prosecutor, and the trial court judge. In signing the agreed order, Grimes agreed to appear in court on December 2 for a status conference hearing and to appear for trial on December 7. Just above the date and signature lines, the order stated in capitalized, bold, italicized lettering that failure to appear could result in criminal prosecution for bail jumping. Bruneau testified that he was in court on December 2, 2009, that Grimes did not appear at the status hearing as

---

[4] Santos testified that he owed Crandell $60.

ordered, that as a result the trial court issued a bench warrant for Grimes's arrest, and that Grimes was arrested for bail jumping on December 30, 2009.

¶9 Following testimony, the trial court's jury instruction 16 explained the special verdict form related to the school zone enhancement on the methamphetamine delivery charge:

> Because this is a criminal case, all twelve of you must agree in order to answer the special verdict form. In order to answer the special verdict form "yes", you must unanimously be satisfied beyond a reasonable doubt that "yes" is the correct answer. If you unanimously have a reasonable doubt as to this question, you must answer "no".

Clerk's Papers (CP) at 54. Grimes's defense counsel did not object to this instruction or to any other of the trial court's jury instructions.

¶10 The jury convicted Grimes of both crimes as charged and found by special verdict that he had been within 1,000 feet of a school bus route stop when the methamphetamine delivery occurred. Grimes appeals the school bus route stop sentence enhancement on his delivery conviction and his bail jumping conviction.

## ANALYSIS

### Special Verdict Instruction

¶11 Citing *Bashaw*, Grimes argues that we should reverse his 24 month sentence enhancement because the trial court erred in instructing the jury that it must be unanimous to return a "yes" or "no" answer on a special verdict finding about whether he delivered a controlled substance within 1,000 feet of a school bus route stop. We disagree that Grimes's sentence enhancement must be reversed.

¶12 Grimes contends that the following instruction is reversible error under *Bashaw*:

> Because this is a criminal case, all twelve of you must agree in order to answer the special verdict form. In order to answer the

special verdict form "yes", you must unanimously be satisfied beyond a reasonable doubt that "yes" is the correct answer. *If you unanimously have a reasonable doubt as to this question, you must answer "no".*

CP at 54 (emphasis added); 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 50.60, at 986 (3d ed. 2008) (WPIC).[5]

¶13 The State responds that (1) Grimes cannot raise this issue for the first time on appeal because he failed to object to the instruction at trial and (2) the asserted error does not fall within the exception to the general rule requiring preservation of issues for appeal because this instruction was not a manifest constitutional error. We agree with the State.

## A. Manifest Error Affecting a Constitutional Right

¶14 RAP 2.5(a)(3) provides, "The appellate court may refuse to review any claim of error which was not raised in the trial court. However, a party may raise the following claimed error[ ] for the first time in the appellate court: . . . manifest error affecting a constitutional right." *State v. Powell*, 166 Wn.2d 73, 82, 206 P.3d 321 (2009). CrR 6.15(c) requires timely and well stated objections to jury instructions. *State v. Scott*, 110 Wn.2d 682, 685-86, 757 P.2d 492 (1988). The policy underlying the preservation rule is to promote "efficient use of judicial resources"; therefore, "[this] court[ ] will not sanction a party's failure to point out at trial an error which the trial court, if given the opportunity, might have been able to correct to avoid an appeal and a consequent new trial." *Scott*, 110 Wn.2d at 685.

---

[5] The instruction used here and in the cases discussed in this opinion were consistent, in all material aspects, with the pattern concluding instruction recommended for jury deliberations on the aggravating factors for controlled substance crimes. *State v. Guzman Nunez*, 160 Wn. App. 150, 163, 248 P.3d 103, *review granted*, 172 Wn.2d 1004 (2011). The *Bashaw* jury was similarly instructed on a school bus route stop sentence enhancement: " 'Since this is a criminal case, all twelve of you must agree on the answer to the special verdict.' " 169 Wn.2d at 139 (quoting *Bashaw* Clerk's Papers at 95).

¶15 Referring to RAP 2.5(a), our Supreme Court recently noted:

> Generally, an appellate court may refuse to entertain a claim of error not raised before the trial court. RAP 2.5(a). An exception exists for a claim of manifest error affecting a constitutional right. [RAP 2.5(a).] In order to benefit from this exception, "the [defendant] must identify a constitutional error and show how the alleged error actually affected the [defendant]'s rights at trial." A constitutional error is manifest if the appellant can show actual prejudice, i.e., there must be a "plausible showing by the [defendant] that the asserted error had practical and identifiable consequences in the trial of the case." If an error of constitutional magnitude is manifest, it may nevertheless be harmless.

*State v. Gordon*, 172 Wn.2d 671, 676, 260 P.3d 884 (2011) (some citations omitted) (internal quotation marks omitted) (quoting *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009)).[6] This manifest constitutional error exception, however, does not afford a defendant a means for obtaining a new trial whenever he can identify a constitutional issue not preserved below. *State v. Kirkpatrick*, 160 Wn.2d 873, 879, 161 P.3d 990 (2007).

## B. Unanimous "No" Special Verdict Jury Instructions

¶16 We first relate how our courts have treated unanimous "no" special verdict jury instructions. We then analyze whether Grimes can raise an objection to a unanimous "no" special verdict jury instruction for the first time on appeal. We conclude that he cannot.

### 1. Supreme Court Decisions: *Goldberg* and *Bashaw*

¶17 In *State v. Goldberg*, our Supreme Court held that unanimity was not required to return a "no" answer to a special verdict form. 149 Wn.2d 888, 893-94, 72 P.3d 1083

---

[6] *Gordon* involved different special verdict instructions asking the jury to find whether the murder " 'manifested deliberate cruelty' " and whether the victim " 'was particularly vulnerable or incapable of resistance.' " 172 Wn.2d at 675.

(2003). In *Goldberg*, the jury first returned a "no" special verdict finding, but the trial court then required the jury to deliberate further because a jury poll revealed that the "no" special verdict finding was not unanimous. 149 Wn.2d at 891. After further deliberation, the jury returned a unanimous "yes" special verdict finding. *Goldberg*, 149 Wn.2d at 891-92. Because the trial court erroneously required the jury to deliberate until it reached a unanimous verdict, our Supreme Court vacated the special verdict. *Goldberg*, 149 Wn.2d at 894.

¶18 In *Bashaw*, our Supreme Court expressly held that a jury instruction stating, " 'Since this is a criminal case, all twelve of you must agree on the answer to the special verdict,' " misstated the law on jury unanimity for special verdicts. 169 Wn.2d at 139 (quoting *Bashaw* Clerk's Papers at 95), 147. The court held that jury unanimity is required only to answer a special verdict "yes" because a "nonunanimous jury decision on such a special finding is a final determination that the State has not proved that finding beyond a reasonable doubt." *Bashaw*, 169 Wn.2d at 145. In reaching this decision, the court noted that its result "[wa]s not compelled by constitutional protections against double jeopardy, but rather by the common law precedent of this court, as articulated in *Goldberg*." *Bashaw*, 169 Wn.2d at 146 n.7 (citation omitted).

¶19 Bashaw did not object to the special verdict jury instruction at trial,[7] but the Supreme Court did not address whether the newly alleged error met the RAP 2.5(a)(3) requirement that it be a "manifest error affecting a constitutional right." *Bashaw*, 169 Wn.2d at 145-48. Then, absent the objection being raised at trial and after acknowledging that the result was not based on protecting a constitutional right, the court applied a constitutional harmless error analysis and reversed Bashaw's conviction because the

---

[7] The Supreme Court in *Bashaw* did not mention that the defendant failed to object to the instruction at trial; however, that is established by *State v. Bashaw*, 144 Wn. App. 196, 199, 182 P.3d 451 (2008), *rev'd*, 169 Wn.2d 133.

instructional error was not harmless under the facts of that case.[8] *Bashaw*, 169 Wn.2d at 147-48. The court described the error as "the procedure by which unanimity [was] inappropriately achieved," which resulted in a "flawed deliberative process tell[ing] . . . little about what result the jury would have reached had it been given a correct instruction." *Bashaw*, 169 Wn.2d at 147.

¶20 Now, citing *Bashaw*, appellants are increasingly claiming that failing to object to special verdict unanimity jury instructional errors at trial does not bar raising the issue for the first time on appeal because such errors constitute manifest constitutional error. But in our view, the Supreme Court's holding in *Bashaw* was not so broad. And we note that the Supreme Court has recently decided to review this preservation issue in cases arising from Divisions One and Three of this court.

### 2. Division Three Court of Appeals: *Nunez*[9]

¶21 Division Three recently held that the unanimous "no" special verdict jury instruction, held to be erroneous in *Bashaw*,[10] does not constitute manifest constitutional error that an appellant can raise for the first time on appeal under RAP 2.5(a)(3). *Nunez*, 160 Wn. App. at 164-65. The

---

[8] Unlike the jury in the present case, the jury in *Bashaw* did not hear any evidence *directly* establishing distance for the three alleged sentence enhancements. 169 Wn.2d at 138-39. In order to impose the school bus route stop sentence enhancements, the State had to prove that the delivery of a controlled substance took place within 1,000 feet of a school bus route stop. *Bashaw*, 169 Wn.2d at 139. At trial, Bashaw objected to a law enforcement officer's testimony regarding the distances he measured with a rolling wheel measuring device from the site of three drug sales to two nearby school bus route stops. *Bashaw*, 169 Wn.2d at 138. On appeal, our Supreme Court held that the trial court erred by admitting testimony regarding the measurements from the device without a showing of the device's accuracy. *Bashaw*, 169 Wn.2d at 142-43. "This was the only testimony *directly addressing* the distance between the transactions and the school bus route stop." *Bashaw*, 169 Wn.2d at 138 (emphasis added).

[9] *State v. Guzman Nunez*, 160 Wn. App. 150, 164-65, 248 P.3d 103, *review granted*, 172 Wn.2d 1004 (2011).

[10] Our Supreme Court decided *Bashaw* after Nunez's trial and sentencing but during his pending appeal to Division Three. *Nunez*, 160 Wn. App. at 155.

instruction that Nunez challenged was the same as that challenged by Grimes, WPIC 50.60. *Nunez*, 160 Wn. App. at 157 n.1, 163. After setting out the analytical steps required by a manifest constitutional error analysis under RAP 2.5(a)(3), the *Nunez* court determined that failing to instruct the jury that it could "nonunanimously" answer "no" on a special verdict did not implicate a constitutional right under the Sixth or Fourteenth Amendments to the United States Constitution or under our state's constitution. 160 Wn. App. at 158-60.

¶22 This analysis is consistent with prior Washington Supreme Court cases, including *Bashaw*, that did not rely on a constitutional analysis as a basis for its decision but, instead, relied on common law rules.[11] *Nunez*, 160 Wn. App. at 160-62. The *Nunez* court noted that when the *Bashaw* court determined that unanimous "no" special verdict instructions are erroneous, the court struck a balance between providing finality for defendants facing special sentencing enhancements and judicial economy, a decidedly nonconstitutional principle.[12] *Nunez*, 160 Wn. App. at 162.

¶23 The *Nunez* court also determined that even if the unanimous "no" instructional error implicated a constitutional right, the error was not "manifest" under RAP 2.5(a)(3) because Nunez did not identify "practical and identifiable consequences on the record that should have been apparent to the trial court." 160 Wn. App. at 163. First, the trial court's instruction materially conformed to the recommended WPIC pattern jury instruction. *Nunez*, 160 Wn. App. at 163. Furthermore, the jury made all required findings by applying the proper burden of proof under the instructions given by the trial court. *Nunez*, 160 Wn. App. at

[11] The *Nunez* court correctly points out that neither the *Bashaw* nor *Goldberg* holdings explicitly turned on any finding of jury coercion and, moreover, the *Bashaw* decision was not compelled by double jeopardy. 160 Wn. App. at 162.

[12] The Washington Supreme Court Committee on Jury Instructions is currently considering a revised WPIC 50.60 in light of *Bashaw*. *See* 11 WPIC 50.60, note on use at 175 (3d ed. Supp. 2010). This should harmonize the *Goldberg* decision that indicated that a nonunanimous special jury verdict was a final verdict.

163-64. Finally, Nunez made no "affirmative showing of actual prejudice"; thus, the asserted error was not "manifest" and not reviewable under RAP 2.5(a)(3). *Nunez*, 160 Wn. App. at 164. We find Division Three's analysis in *Nunez* persuasive that the WPIC instruction as applied here is neither constitutionally deficient nor a manifest error under RAP 2.5(a)(3).

### 3. Division One Court of Appeals: *Ryan* and *Morgan*[13]

¶24  Division One of our court also recently addressed the instruction Grimes challenges. Division One panels have, however, reached different conclusions. In *Ryan*, a panel rejected Division Three's *Nunez* rationale:[14]

> In a thoughtful and thorough opinion, Division Three of this court recently [decided that the instructional error] was not of constitutional magnitude and cannot be raised for the first time on appeal.

> We reach the opposite conclusion. The *Bashaw* court strongly suggests its decision is grounded in due process. The court identified the error as "the procedure by which unanimity would be inappropriately achieved," and referred to "the flawed deliberative process" resulting from the erroneous instruction. The court then concluded the error could not be deemed harmless beyond a reasonable doubt, which is the constitutional harmless error standard. The court refused to find the error harmless even where the jury expressed no confusion and returned a unanimous verdict in the affirmative. We are constrained to conclude that under *Bashaw*, the error must be treated as one of constitutional magnitude and is not harmless.

---

[13] *State v. Ryan*, 160 Wn. App. 944, 252 P.3d 895, *review granted*, 172 Wn.2d 1004 (2011); *State v. Morgan*, 163 Wn. App. 341, 261 P.3d 167, *petition for review filed*, No. 86555-8 (Wash. Oct. 3, 2011).

[14] In August 2011, our Supreme Court granted review in *Nunez* and *Ryan* and consolidated them. *Morgan* also has a pending petition for review by the court, scheduled on the January 2012 motion calendar. The Supreme Court is expected to address the issue of whether a criminal defendant may challenge for the first time on appeal a special verdict unanimity jury instruction that is erroneous under *Bashaw*, 169 Wn.2d 133.

*Ryan*, 160 Wn. App. at 948-49 (footnotes omitted) (quoting *Bashaw*, 169 Wn.2d at 147).

¶25 More recently, a different Division One panel agreed with *Nunez* and rejected its colleagues' decision in *Ryan*. The *Morgan* court agreed with the *Nunez* court that unanimous "no" special verdict instruction errors were compelled by the common law and not by due process, as suggested in *Ryan*. 163 Wn. App. at 351-52.

¶26 *Morgan* examined both the due process clause of the Fourteenth Amendment to the United States Constitution and our state constitution to ascertain whether either could serve as the basis of our Supreme Court's *Bashaw* decision. 163 Wn.2d at 351-52. It concluded that neither constitution could provide such a basis because (1) "[t]he due process clause of the Fourteenth Amendment to the United States Constitution does not serve to protect state-law rights" and (2) "our state constitution's due process clause, article I, section 3, has never been held to incorporate common law rights within its protections." *Morgan*, 163 Wn. App. at 351-52 (footnotes omitted) (citing *California v. Greenwood*, 486 U.S. 35, 43, 108 S. Ct. 1625, 100 L. Ed. 2d 30 (1988)). In support of this analysis, the court in *Morgan* noted that "Washington's due process clause is coextensive with that of the Fourteenth Amendment, providing no greater protection," and the right to nonunanimous "no" special verdict instructions does not exist in federal courts. 163 Wn. App. at 352.

¶27 We agree that because the *Bashaw* decision is not founded in our state constitution or in the United States Constitution, an error in giving the special verdict in Grimes's case is not based on a constitutional right.

## C. Manifest Constitutional Error Analysis

¶28 Three steps are involved in analyzing whether an issue raised for the first time on appeal can benefit from RAP 2.5(a)'s manifest constitutional error exception. The defendant has the initial burden of showing that (1) the

error was "truly of constitutional dimension" and (2) the error was "manifest." *O'Hara*, 167 Wn.2d at 98. A defendant cannot simply assert that an error occurred at trial and label the error "constitutional"; instead, he must identify an error of constitutional magnitude and show how the alleged error actually affected his rights at trial. *Gordon*, 172 Wn.2d at 676. If he successfully shows that a claim raises a manifest constitutional error, then the burden shifts to the State to prove that the error was harmless beyond a reasonable doubt under the *Chapman*[15] standard. *Gordon*, 172 Wn.2d at 676 n.2.

### 1. Is the Error "Constitutional"?

¶29  To determine whether an error is truly of constitutional dimension, appellate courts first look to the asserted claim and assess whether, if the claim is correct, it implicates a constitutional interest as compared to another form of trial error. *O'Hara*, 167 Wn.2d at 98. The failure to instruct a jury on every element of the charged crime, for example, would be constitutional in nature. *Gordon*, 172 Wn.2d at 677 (citing *State v. Aumick*, 126 Wn.2d 422, 429, 894 P.2d 1325 (1995); *Scott*, 110 Wn.2d at 689). Jury instruction errors, however, are not presumptively of constitutional magnitude. *See O'Hara*, 167 Wn.2d at 106.

### 2. Is the Error "Manifest"? Did It Have an "Identifiable Consequence"?

¶30  "After determining the error is of constitutional magnitude, the appellate court must determine whether the error was manifest." *O'Hara*, 167 Wn.2d at 99. For an error to be "manifest," the defendant must show that the asserted error had practical and identifiable consequences

---

[15] *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) (State has burden to show harmless error beyond a reasonable doubt).

at trial.[16] *Gordon*, 172 Wn.2d at 676. Given what the trial court knew at that time, to ascertain whether the trial court could have corrected the alleged error, the appellate court must place itself in the shoes of the trial court when determining if an alleged error had practical and identifiable consequences. *O'Hara*, 167 Wn.2d at 100.

### 3. Is the Error "Harmless"?

¶31 If an alleged error has practical and identifiable consequences, i.e., if it is "manifest" and also of "constitutional magnitude," the reviewing court usually will address the merits of the claim and determine whether, in the context of the entire record, the error is harmless beyond a reasonable doubt.[17] *O'Hara*, 167 Wn.2d at 99. To find an error harmless beyond a reasonable doubt, an appellate

---

[16] The determination of whether an error is "manifest" requires a defendant to show "actual prejudice," which we determine by looking at the asserted error to see if it had practical and identifiable consequences at trial. *Gordon*, 172 Wn.2d at 676. This "actual prejudice" language has frustrated and confused many lawyers, clerks, and judges because the term of art, "actual prejudice," differs from a harmless error analysis, which determines whether reversal is warranted. *O'Hara*, 167 Wn.2d at 99-100.

We acknowledge that it is somewhat counterintuitive that an error might cause "actual prejudice" yet ultimately be declared "harmless." It is our hope that having accepted *Ryan* and *Nunez* for review, the Supreme Court will resolve this somewhat circular reasoning and provide a more straightforward definition of "manifest" error in the context of RAP 2.5(a)'s exception to the preservation of error rule. In the meantime, however, we have removed "actual prejudice" from our manifest error analysis and substituted "practical and identifiable" consequences in its place.

[17] We note the discrepancy in our case law regarding whether an appellate court may, or must, address the merits of a claim raised for the first time on appeal that is both manifest and a constitutional error. Some cases seem to suggest that an appellate court has discretion to address the merits of such a claim. *See, e.g.,* *Kirkpatrick*, 160 Wn.2d at 879 ("Whether RAP 2.5(a)(3) should allow the [claim not raised in the trial court] on appeal is determined after a two-part analysis."); *State v. Kirkman*, 159 Wn.2d 918, 934, 155 P.3d 125 (2007) ("RAP 2.5(a)(3) does not permit *all* asserted constitutional claims to be raised for the first time on appeal, but only certain questions of 'manifest' constitutional magnitude."). Other cases, however, suggest that appellate courts *must* address the merits of a claim that is manifest and constitutional error. *See, e.g.,* *Gordon*, 172 Wn.2d at 676 (An appellate court may refuse a claim not raised at trial, however, "[a]n exception exists for a claim of manifest error affecting a constitutional right."); *O'Hara*, 167 Wn.2d at 98 (The general rule that appellate courts may refuse to review a claim of error that is not raised in the trial court "includes an exception when the

court must find that the alleged instructional error did not contribute to the verdict obtained. *State v. Brown*, 147 Wn.2d 330, 344, 58 P.3d 889 (2002).

## D. Application of Three-Step Manifest Constitutional Analysis[18] to Grimes

### 1. Grimes's Alleged Error Not "Constitutional"

¶32 Grimes fails to point to a specific constitutional interest affected by the alleged error; instead, he cites *Bashaw* generally. But *Bashaw* does not hold that the instructional error at issue here is of constitutional magnitude. This rule is compelled by "the common law precedent of this court, as articulated in *Goldberg.*" *Bashaw*, 169 Wn.2d at 146 n.7. We also agree with the *Nunez* and *Morgan* courts' constitutional analyses that the rule in *Bashaw* was not

claimed error is a 'manifest error affecting a constitutional right.' " (quoting RAP 2.5(a)).

We also note the uncertainty in our state's case law regarding whether appellate courts *may* or *must* refuse to review unpreserved claims. *Compare* RAP 2.5(a) ("The appellate court *may* refuse to review any claim of error which is not raised in the trial court." (emphasis added)), *and Gordon*, 172 Wn.2d at 676 ("Generally, an appellate court *may* refuse to entertain a claim of error not raised before the trial court." (emphasis added)), *with Powell*, 166 Wn.2d at 84 ("We *may not review* the unpreserved assignment of error unless we determine the admission of . . . testimony constitutes manifest constitutional error." (emphasis added)).

[18] Our Supreme Court recently held in *State v. Robinson* that failure to preserve an issue at trial would not prevent an appellant from raising the issue after a change in constitutional interpretation. 171 Wn.2d 292, 305, 253 P.3d 84 (2011). For this special situation involving a change in constitutional interpretation, the court established an additional four-part test for bypassing the general issue preservation requirements of RAP 2.5(a):

[P]rinciples of issue preservation do not apply where the following four conditions are met: 1) a court issues a new controlling constitutional interpretation material to the defendant's case, 2) that interpretation overrules an existing controlling interpretation, 3) the new interpretation applies retroactively to the defendant, and 4) the defendant's trial was completed prior to the new interpretation.

*Robinson*, 171 Wn.2d at 305. The *Robinson* four-part test does not apply here.

Even if a *Bashaw* instructional error were constitutional, the *Robinson* exception would not apply because unlike the situation in *Robinson, Bashaw* did not overrule an existing controlling constitutional interpretation. In holding the special verdict instruction to be erroneous, *Bashaw* applied an existing rule from *Goldberg*, which antedated Grimes's trial by six years. 169 Wn.2d at 145.

compelled by constitutional protections, but rather by Washington's common law. Adopting the reasoning in *Nunez* and *Morgan*, we hold that instructional error requiring jury unanimity to answer "no" on the special sentence enhancement verdict form (asking whether Grimes delivered methamphetamine within 1,000 feet of a school bus route stop) is not constitutional in nature. *Morgan*, 163 Wn. App. at 351-52; *Nunez*, 160 Wn. App. at 159.

### 2. Grimes's Alleged Error Not "Manifest"

¶33 But even if our Supreme Court ultimately holds in *Ryan* and *Nunez* that this particular instructional error is based on constitutional protections, in Grimes's case it is not "manifest."[19] Grimes does not assert that the erroneous jury instruction had a "practical and identifiable consequence" at his trial; nor does our independent review of the record reveal any such consequence. Furthermore, here, the instructional error could not have had a practical and identifiable consequence at trial because (1), unlike Bashaw, Grimes did not cast doubt on the existence of the evidence supporting the imposition of the sentence enhancement on the record at trial[20] and (2), unlike in *Goldberg*, the record does not show that the jury disagreed about whether the

---

[19] We choose, however, to address whether the error Grimes asserts is "manifest" under RAP 2.5(a) because our analysis will serve as an alternative basis for ruling that Grimes does not meet the test for raising this error for the first time on appeal, even if our Supreme Court ultimately holds that this type of instructional error is constitutional.

[20] *See Kirkpatrick*, 160 Wn.2d at 881 (Although Kirkpatrick's unlawful seizure claim was constitutional, it was not manifest because "[t]he record [wa]s insufficient to determine any practical consequences of the [claim] on the outcome of Kirkpatrick's trial given other, unchallenged evidence of his guilt."); *Powell*, 166 Wn.2d at 85 (Even if our Supreme Court had ruled that Powell's claim was constitutional in nature, it had no practical and identifiable consequences on the outcome of the trial because "[t]he record shows the jury had ample testimony . . . to support its guilty verdict.").

We note, however, that our Supreme Court's use of unchallenged evidence in *Kirkpatrick* and *Powell* to find a lack of practical and identifiable consequences appears to be a different analysis from that in *O'Hara*. 167 Wn.2d at 100 ("Thus to determine whether an error is practical and identifiable, the appellate court must place itself in the shoes of the trial court to ascertain whether, given what the trial court knew at that time, the court could have corrected the error.") We

sentence enhancement was proved beyond a reasonable doubt. And Grimes's jury was not instructed to deliberate to unanimity after first returning a verdict that was not unanimous on the sentence enhancement. Thus, on the record before us, the unanimous sentence enhancement instruction had no "practical and identifiable consequence" at Grimes's trial, nor can we say that the jury instruction error was so obvious that it warrants appellate review. *O'Hara*, 167 Wn.2d at 99-100.

¶34 On the contrary, placing ourselves in the shoes of the trial court—as instructed by *O'Hara*—it is unlikely that the trial court would have corrected the instructional error that Grimes raises because the trial court used the pattern jury instruction for deliberations on sentence enhancements for controlled substance crimes. Furthermore, during Grimes's trial, *Bashaw* had not yet been decided.

### 3. Grimes's Alleged Error Is "Harmless"

¶35 Because the error in the jury instruction that Grimes challenges for the first time on appeal is not manifest, we need not reach the merits of his claim or address the third test: whether the error is harmless beyond a reasonable doubt. But again, in light of the Supreme Court's consolidated review of *Nunez* and *Ryan*, we address this issue.

¶36 At most, the *Bashaw* court suggests, but does not hold, that an erroneous unanimous special verdict instruction cannot be deemed harmless beyond a reasonable doubt because the instructional error affects the procedure by which unanimity would be achieved. 169 Wn.2d at 147-48.

---

also note that other Supreme Court cases have used the existence of unchallenged evidence to analyze whether an error was harmless. *State v. Schaler*, 169 Wn.2d 274, 288-90, 236 P.3d 858 (2010) (After holding a trial error to be manifest because "[t]he trial court could have corrected the error given the clear state of the law at the time that it instructed the jury," our Supreme Court held the error was not harmless because the conviction was not supported by unchallenged evidence.)

But in *Bashaw*, the jury did not hear any evidence *directly* establishing distance for the three alleged sentence enhancements because Bashaw called into question the accuracy of the measuring device at trial, a challenge on which she later prevailed on appeal. 169 Wn.2d at 138, 143. Furthermore, for one of the three *Bashaw* sentence enhancements, the jury was presented with conflicting testimony from law enforcement and from an informant about the actual distance between the drug delivery and the parking lot containing a school bus route stop. 169 Wn.2d at 138-39. For the other two counts with special enhancements, the evidence was a police detective's estimate of the length of the parking lot where the two drug sales occurred. *Bashaw*, 169 Wn.2d at 138, 144. This parking lot also contained a school bus route stop, and its length was used by the jury to establish the existence of the aggravating factor. *Bashaw*, 169 Wn.2d at 137-38, 144. Under these circumstances, given the nature of the evidence, the Supreme Court could not determine that the procedure by which the *Bashaw* jury achieved unanimity on the special verdict was harmless beyond a reasonable doubt.

¶37 No such controversies or uncertainties exist here. Grimes has not attempted to challenge the uncontroverted evidence that the sale occurred less than 1,000 feet from a school bus route stop. Therefore, the procedure by which unanimity was achieved could not have affected the jury's special verdict on the sentence enhancement.

¶38 We hold that the special verdict jury instructional error here does not arise in an area entitled to constitutional protection, nor is it manifest, as Grimes offered no evidence that it had practical and identifiable consequences at his trial. Thus, this error was not preserved for appeal and it is not subject to review for the first time on appeal under RAP 2.5(a). Nevertheless, for completeness, we have reviewed the entire record on appeal and hold that any such error was harmless beyond a reasonable doubt in the context of Grimes's trial as it did not affect his rights at trial or the jury's verdict.

¶39  A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HUNT and JOHANSON, JJ., concur.

Review denied at 175 Wn.2d 1010 (2012).