# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47377-1-II |
| Respondent, | |
| v. | |
| JEREMY TRENTON ROSE, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Jeremy Rose appeals his conviction of assault in the second degree with a deadly weapon enhancement. We hold that the trial court erred in instructing the jury on defense of property but the error was harmless; Rose invited the error on the deadly weapon enhancement instruction; and the trial court did not err by failing to instruct the jury on an inferior degree crime. We affirm Rose's conviction.

## FACTS

The State charged Rose with two counts of assault in the first degree, both with deadly weapon enhancements, and resisting arrest. The jury found him guilty of one count of assault in the second degree,[1] while armed with a deadly weapon. It acquitted him of all other charges.

---

[1] Assault in the second degree is an inferior degree crime of assault in the first degree. RCW 10.61.003.

I.      TRIAL TESTIMONY

Stephen and Susan Ortloff lived in Tacoma, but they had no residence.[2]  In December 2013, they learned about a three-story abandoned building where other homeless people lived.  The Ortloffs moved into the top floor of the building and lived with another couple.  Rose and Michael Runyon also lived in the building.

Rose had recently turned 18 years old.  He became homeless after he aged out of the foster care system and his grandmother's landlord evicted him from her home.  In the first week of November 2013, he found the abandoned building and began to live there.  Rose lived in the second floor apartment because it was cleaner than the rest of the building.

Although Stephen testified that at some point the Ortloffs moved into the second floor apartment and shared the space with Rose, Rose denied it.  Sometime near the end of December, Rose left the building and traveled to Seattle to visit his brother.  Susan testified that during this period, the Ortloffs moved into the second floor apartment without Rose's permission.  Rose did not return until January 1, 2014.

On January 1, 2014, the Ortloffs returned from grocery shopping and found the entrances to the building barricaded shut.  After they broke through the barricades and entered the building, they found the door to the second floor apartment locked.  Stephen left, grabbed a pick axe, and broke the locks on the door.  The Ortloffs pushed through the door and entered the apartment.

What happened next is in dispute.  According to Stephen, the Ortloffs entered the apartment and Rose stood inside with a stick.  Stephen went into the back room to put the grocery bags away.  He returned from the back bedroom to hear Susan yelling that she had been stabbed.  Stephen did

---

[2] To avoid confusion, we will refer to the Ortloffs by their first names.  We intend no disrespect.

not see Rose stab Susan. Stephen attacked Rose, and after he realized that Rose stabbed him, the Ortloffs ran out of the building. Stephen did not see a weapon during the altercation.

According to Susan, the Ortloffs exchanged some intense words with Rose through the door before Stephen broke the locks and they entered the apartment. Rose yelled that he would throw Susan out the second story window if she entered the room. Stephen broke through the door and Susan entered the room with her bags. Susan turned around and saw something in Rose's hand that he used to stab her in the neck. She did not know what Rose used to stab her, but she thought it was a pen. She denied having a weapon in her possession. She testified that Stephen attacked Rose after Rose stabbed her.

According to Rose, when he returned to the building from visiting his brother, his possessions were strewn about the apartment. Rose decided to lock the door and block it with a couch. He heard the Ortloffs banging on the door and yelling. Rose was afraid, so he stayed quiet, hoping they would leave. The Ortloffs threatened to kill Rose and take all of his belongings. The Ortloffs broke through the door, Susan attacked Rose with a knife and he struggled to get it away from her. He admitted taking the knife out of Susan's hand and stabbing her once. Rose also admitted that he intended to stab Susan. Stephen charged in and tackled Rose. Stephen began to choke and punch Rose. Rose testified that he "let go of the knife after he attacked me, and I ended up finding it on the floor, so I stabbed him or cut him in the arm." 7 Report of Proceedings (RP) at 660. Rose testified that he cut Stephen across the forehead. Stephen then punched Rose and knocked him unconscious. When Rose awoke, the Ortloffs were gone. Rose went to the hospital to take care of his injuries.

Susan also went to the hospital for her injuries. Dr. Thomas Ferrer attended to Susan in the emergency room. He diagnosed Susan with a stab wound and a "small amount of collapse" of the lung. 5 RP at 379.

On January 3, 2014, Officer James Land arrested Rose. Land did not find a weapon on Rose or in his belongings. Land testified that Rose had a black eye when he was arrested.

II.     JURY INSTRUCTIONS

At trial, both Rose and the State proposed similar deadly weapon jury instructions, but Rose's instruction included an extra concluding sentence. The trial court used Rose's proposed instruction that reads as follows.

> For purposes of a special verdict the State must prove beyond a reasonable doubt that the defendant was armed with a deadly weapon at the time of the commission of the crime charged in Counts One and Two and the lesser included crimes for those counts.
> A person is armed with a deadly weapon if, at the time of the commission of the crime, the weapon is easily accessible and readily available for offensive or defensive use. The State must prove beyond a reasonable doubt that there was a connection between the weapon and the defendant. The State must also prove beyond a reasonable doubt that there was a connection between the weapon and the crime. In determining whether these connections existed, you should consider, among other factors, the nature of the crime and the circumstances surrounding the commission of the crime, including the location of the weapon at the time of the crime and the type of weapon.
> A knife having a blade longer than three inches is a deadly weapon. A deadly weapon is an implement or instrument that has the capacity to inflict death and, from the manner in which it is used, is likely to produce or may easily produce death. Whether a knife having a blade less than three inches long is a deadly weapon is a question of fact that is for you to decide.

Clerk's Papers (CP) at 112.

The State proposed two jury instructions, numbers 21 and 22, regarding the lawful use of force in defense of property. The State argued that RCW 9A.16.020(3) supported giving the

4

instructions and that although the instructions were not from the Washington Practice Pattern Criminal Jury Instructions (WPIC), they were supported by case law.

Rose argued to the trial court that the instructions on defense of property should not be provided to the jury because Rose was not requesting the instructions, and the instructions were not supported by the evidence. Rose proposed that WPIC 17.02[3] be used to instruct the jury on self-defense. Rose argued that he did not assert defense of property as a defense, and therefore, the trial court should not instruct on it.

The trial court ruled in the State's favor because the instructions were "kind of a catch-all that includes self-defense against the person as well as the property." 7 RP at 708. The trial court agreed with the State that "to leave the instructions out of the instruction packet is just, again, to invite the jury to speculate as to whether or not the defendant could use force in defense of what he considered to be his apartment." 7 RP at 712. The trial court stated, "I'm going to give both 21 and 22 since it further defines what force is lawful or not lawful." 7 RP at 716. Jury instruction 21 states:

> An individual's use of force upon or toward another person is not lawful when it is used in preventing or attempting to prevent a malicious trespass or other malicious interference with real property or personal property that is not lawfully in the individual's possession. Real property means the land itself and all buildings, structures, or improvements thereon.
> An individual is not lawfully in possession of real or personal property when he is not licensed, invited, or otherwise privileged to possess the property.

CP at 114. Jury instruction 22 states:

> The use of deadly force or a deadly weapon is not lawful when it is used in preventing or attempting to prevent a malicious trespass or other malicious interference with real property or personal property.
> Deadly force is the intentional application of force through any means reasonably likely to cause death or serious physical injury.

---

[3] 11 WPIC 17.02, at 253 (2008).

CP at 115. In addition to instructing the jury on defense of property, the trial court instructed the jury on self-defense. Jury instruction 20 described when the use of force upon or toward another person was lawful. It also instructed on other related issues of self-defense.

Rose requested the trial court include an instruction for the inferior degree crime of assault in the third degree. The trial court denied his request, stating that it did not see the applicability of assault in the third degree because there was

> no criminal negligence here based on his testimony. And so I'm not going to give that instruction since this wasn't criminal negligence.
> This was an intent to do exactly what he did, albeit his claim was self-defense, but there was no ambiguity in terms of his testimony as to what he was attempting to do. And it wasn't like the knife slipped out of his hand or that was accidental, that he meant to stab her toe. There's just no element of negligence that I could interpret in this case based on his testimony, and I'm going to respectfully decline to give those lesser includeds.

7 RP at 706.

The jury found Rose guilty of the inferior degree crime of assault in the second degree while armed with a deadly weapon.

At sentencing, Rose filed a motion for a new trial based on the jury instructions and jurors' questions[4] that prejudiced his right to a fair trial; he argued they were essentially comments on the evidence and affected the outcome of the trial. The trial court denied the motion, reasoning the instructions stated the correct law as it exists in Washington. The trial court sentenced Rose to 25 months of confinement. Rose appeals.

---

[4] The jurors asked questions about the definition of resisting arrest, a further definition for self-defense, and seeing an exhibit that showed the apartment's layout.

ANALYSIS

I.     DEFENSE OF PROPERTY JURY INSTRUCTIONS

Rose argues that the trial court erred in instructing the jury with non-WPIC defense of property instructions because they were improper under the facts, misleading, and incorrect statements of the law.  We agree that the trial court erred in instructing the jury on a defense not requested by Rose, but we hold that the error was harmless.

A.     Standard of Review

We review alleged errors of law in jury instructions de novo.  *State v. Dow*, 162 Wn. App. 324, 330, 253 P.3d 476 (2011).  "Generally, we review a trial court's choice of jury instructions for an abuse of discretion."  *State v. Douglas*, 128 Wn. App. 555, 561, 116 P.3d 1012 (2005).  Jury instructions are sufficient if substantial evidence supports them, they allow the parties to argue their theories of the case, and, when read as a whole, they properly inform the jury of the applicable law.  *State v. Clausing*, 147 Wn.2d 620, 626, 56 P.3d 550 (2002).  The precise wording of the instructions is within the broad discretion of the court.  *See State v. Alexander*, 7 Wn. App. 329, 336, 499 P.2d 263 (1972).  It is not error for a trial court to refuse a specific instruction when a more general instruction adequately explains the law and allows each party to argue its case theory.  *State v. Portrey*, 102 Wn. App. 898, 902, 10 P.3d 481 (2000).

B.     The Trial Court Erred By Giving Instructions 21 and 22

"When read as a whole, jury instructions must make the legal standard 'manifestly apparent to the average juror.'"  *State v. Bland*, 128 Wn. App. 511, 514, 116 P.3d 428 (2005) (quoting *State v. LeFaber*, 128 Wn.2d 896, 900, 913 P.2d 369 (1996)).

Rose opposed the instructions not because they were incorrect statements of the law, but because they would confuse the jury and did not support his asserted defense.  Rose did not claim

defense of property and argued to the trial court that instructing the jury on that defense would lead to confusion. The trial court gave the instructions because it did not "want the jury to think that somehow that they can infer he was defending his personal property and that was okay." 7 RP at 713. Rose made it abundantly clear in closing argument to the jury that he was asserting self-defense as a defense and not defense of property. We hold that the trial court erred by instructing the jury on a defense theory that Rose did not assert and did not argue.

C.      Harmless Error

The State argues that if the trial court erred in instructing the jury with instructions 21 and 22, any error was harmless. We agree.

There are two standards that can be employed when determining if trial court errors relating to jury instructions are harmless. Under the constitutional harmless error standard, an error in jury instructions is harmless if within the entire context of the record, it is harmless beyond a reasonable doubt. *State v. Grimes*, 165 Wn. App. 172, 187, 267 P.3d 454 (2011). "To find an error harmless beyond a reasonable doubt, an appellate court must find that the alleged instructional error did not contribute to the verdict obtained." *Grimes*, 165 Wn. App. at 187-88. "In deciding whether the error contributed to the verdict and whether it is harmless, the court must 'thoroughly examine the record' and may consider how the case is argued to the jury." *State v. Johnson*, 116 Wn. App. 851, 857, 68 P.3d 290 (2003) (quoting *State v. Brown*, 147 Wn.2d 330, 341, 58 P.3d 889 (2002)). Under the nonconstitutional harmless error standard, an error requires reversal only if there is a reasonable probability that the error materially affected the outcome of the trial. *State v. Gower*, 179 Wn.2d 851, 854-55, 321 P.3d 1178 (2014).

The State proposes that we utilize the constitutional harmless error standard. Because this standard benefits Rose, and assuming, but not deciding that the instructional error was

8

constitutional in nature, we employ the standard the State proposes. We conclude that any errors in the jury instructions were harmless because, beyond a reasonable doubt, any error did not impact the jury's verdict.

In closing, the State focused on the defense of property, arguing that Rose "had no right to use deadly force to defend property that didn't belong to him." 7 RP at 728. The State cited to jury instructions 21 and 22: "You can't use force to defend property that doesn't belong to you . . . [a]nd the one beyond that is you can't use deadly force to protect property either." 7 RP at 738. The State reiterated a number of times that Rose could not "use force to defend that apartment. It didn't belong to him." 7 RP at 752. However, the State also focused on the self-defense instruction that Rose's use of force was not reasonable and therefore, was not a lawful use of force.

Conversely, in closing, Rose argued that the State "talked a lot about property versus persons. What the State is saying [is] that [Rose] had no right to use force against the Ortloffs because it was his intention to protect property and property that wasn't his." 7 RP at 766. The defense unequivocally told the jury that although Rose wanted to keep the Ortloffs out of the building, "that doesn't mean that the force that was being used [by Rose] was . . . to protect property." 7 RP at 767. The defense further argued that Rose had a right to defend himself and "defend his person." 7 RP at 767. Rose made it clear to the jury that he acted in self-defense and not in defense of property.

Because Rose made it abundantly clear to the jury in his closing argument that he did not assert the defense of property, he only asserted that of self-defense, any instructional error was harmless. In addition, both Rose and the State argued that Rose did not act in defense of property. Therefore, both parties argued to the jury that jury instructions 21 and 22 did not apply. Rose fails to show that he suffered prejudice. The trial court's error is harmless beyond a reasonable doubt.

II.      STATEMENT OF ADDITIONAL GROUNDS (SAG) CLAIMS

     A.      Jury Instruction 19 – Deadly Weapon

Rose asserts in his SAG that the trial court erred by instructing the jury on the deadly weapon enhancement in instruction 19 for various reasons. Because Rose proposed the instruction given by the trial court, we are precluded from reviewing the assertion.

The Washington Supreme Court has held, "[a] party may not request an instruction and later complain on appeal that the requested instruction was given." *State v. Boyer*, 91 Wn.2d 342, 345, 588 P.2d 1151 (1979). Although a "strict rule," we "have rejected the opportunity to adopt a more flexible approach." *State v. Studd*, 137 Wn.2d 533, 547, 973 P.2d 1049 (1999). Under the invited error doctrine, "even where constitutional rights are involved, we are precluded from reviewing jury instructions when the defendant has proposed an instruction or agreed to its wording." *State v. Winings*, 126 Wn. App. 75, 89, 107 P.3d 141 (2005).

Here, the trial court instructed the jury according to the instruction Rose proposed and invited error precludes our review.

     B.      Inferior Degree Crime Instruction

Rose asserts that the trial court erred in failing to give his proposed instruction on the inferior degree crime of assault in the third degree. We disagree.

In *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978), the Washington Supreme Court "set forth a two-prong test to determine whether a party is entitled to an instruction on a lesser included offense under RCW 10.61.006."[5] *State v. Condon*, 182 Wn.2d 307, 316, 343

---

[5] The parties argued the case in terms of lesser included offense rather than inferior degree offense. Although the analysis differs when a trial court considers a request for an instruction on an inferior degree offense and when it considers a request for a lesser included offense, the distinction between lesser included and inferior degree offense instructions is not, however, significant in this case. *See State v. Fernandez-Medina*, 141 Wn.2d 448, 454-55, 6 P.3d 1150 (2000). "This is so because

P.3d 357 (2015). An instruction on an inferior degree offense is properly administered when: "(1) the statutes for both the charged offense and the proposed inferior degree offense proscribe but one offense; (2) the information charges an offense that is divided into degrees, and the proposed offense is an inferior degree of the charged offense; and (3) there is evidence that the defendant committed only the inferior offense." *State v. Fernandez-Medina*, 141 Wn.2d 448, 454, 6 P.3d 1150 (2000) (internal quotation marks omitted) (quoting *State v. Peterson*, 133 Wn.2d 885, 891, 948 P.2d 381 (1997)). "The purpose of this test is to ensure that there is evidence to support the giving of the requested instruction. If interpreted too literally, though, the factual test would impose a redundant and unnecessary requirement because all jury instructions must be supported by sufficient evidence." *Fernandez-Medina*, 141 Wn.2d at 455. The party requesting the instruction is only entitled to the instruction when both prongs are satisfied. *Condon*, 182 Wn.2d at 316.

Both Rose and the State agree that the legal prong was satisfied. Therefore, we must determine whether the factual prong was satisfied. "When evaluating whether the evidence supports an inference that the lesser crime was committed, courts view the evidence in the light most favorable to the party who requested the instruction." *State v. Henderson*, 182 Wn.2d 734, 742, 344 P.3d 1207 (2015). The rule is particularly important in cases "where the numerous witness accounts varied widely and often conflicted with one other." *Henderson*, 182 Wn.2d at 742. "Our case law is clear, however, that the evidence must affirmatively establish the

---

the test for determining if a party is entitled to an instruction on an inferior degree offense differs from the test for entitlement to an instruction on a lesser included offense only with respect to the legal component of the test." *Fernandez-Medina*, 141 Wn.2d at 455. Here, Rose and the State each concede that the legal component of the test is satisfied. Therefore, as in *Fernandez-Medina*, we focus on the factual prong as stated in *Workman*, 90 Wn.2d 443.

defendant's theory of the case—it is not enough that the jury might disbelieve the evidence pointing to guilt." *Fernandez-Medina*, 141 Wn.2d at 456.

We review a trial court's decision regarding the second prong of the *Workman* test for abuse of discretion. *Henderson*, 182 Wn.2d at 743. A court abuses its discretion when its decision is based on the incorrect legal standard. *Henderson*, 182 Wn.2d at 743.

Rose's proposed jury instruction on assault in the third degree correctly defined the elements of the crime: "A person commits the crime of assault in the third degree when he, with criminal negligence, causes bodily harm to another person by means of a weapon or other instrument or thing likely to produce bodily harm." CP at 74. Rose's proposed instruction also defined criminal negligence from WPIC 10.04, at 212 (2014) as:

> A person is criminally negligent or acts with criminal negligence when he or she fails to be aware of a substantial risk that a wrongful act may occur and this failure constitutes a gross deviation from the standard of care that a reasonable person would exercise in the same situation.
> When criminal negligence as to a particular result is required to establish an element of a crime, the element is also established if a person acts intentionally or knowingly or recklessly as to that result.

CP at 75.

The trial court determined that because the elements of assault in the third degree under the proposed alternative included a different mens rea from either of assault in the first or second degree, no factual basis existed to give the instruction. Rose admitted to stabbing Susan. He also admitted that he intended to stab her. Even when viewing the evidence in the light most favorable to Rose, no factual basis supported that he acted with negligence. Therefore, the trial court did not abuse its discretion by failing to instruct on the inferior degree crime.

We affirm the trial court.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Maxa, J.

Sutton, J.