# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75427-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JUWAYNE PINCKNEY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: April 23, 2018 |

SPEARMAN, J. — Juwayne Pinckney appeals a sentencing condition barring contact between him and a witness whom he had repeatedly beaten in the past. Pinckney further challenges his conviction for second degree assault, arguing that the term "torture" is unconstitutionally vague as applied to the facts of his case. We disagree with both contentions. Issues raised by Pinckney in his statement of additional grounds for review are also without merit. Finding no error, we affirm.

## FACTS

Juwayne Pinckney and Melissa Eckhouse met in 2009. They lived together for some time in 2010, and had an on and off dating relationship from 2010 to 2013. In 2013, Eckhouse sought a protection order from Pinckney based on his history of physical violence towards her.

Eckhouse and Pinckney reconnected in mid-2014. In August 2014, Eckhouse was housesitting for friends who were away on vacation. Pinckney

came to stay at the house with Eckhouse. On the morning of September 8, 2014, Eckhouse woke up and saw Pinckney standing over her, looking at her "peculiarly." Verbatim Report of Proceedings (VRP) (3/31/16) at 424. When she tried to stand up, he smashed her head into the floor with his hand. He told her that "he was going to, like, beat me all day, because I deserved it." VRP (3/31/16) at 426. He told her to sit on the couch and "admit what I did was wrong." VRP 3/31/16 at 427. Eckhouse did not understand what she had done to make him angry. He wrapped a belt around his hand, and whipped her exposed body. The belt was made of heavy leather, with an arch metal stud design and colored stones inserted throughout. When she curled into a fetal position in an attempt to shield herself from the blows, he whipped her back, legs, and thighs. After beating Eckhouse for approximately two hours, Pinckney paused and left the room. Eckhouse fled the house and ran into the street.

Two Highline School District employees in a school bus saw Eckhouse in the street. Her naked body was covered with bruises so severe that one thought she was burned and the other thought she was wearing a brightly colored negligee. Eckhouse laid down on the floor of the empty school bus, and they covered her while the bus driver called the police.

Pinckney fled to Las Vegas with his friend Jackie Collins. During the trip, Pinckney told Collins about the September 8 assault on Eckhouse. Pinckney was arrested in Las Vegas and extradited back to Washington.

Pinckney was charged with one count of second degree assault – domestic violence, based upon knowingly inflicting bodily harm "which by

2

design did cause such pain and agony as to be the equivalent of that produced by torture." Clerk's Papers (CP) at 1; RCW 9A.36.021(1)(f). This count also alleged that the crime involved the aggravating factor of being "part of an ongoing pattern of psychological, physical or sexual abuse of the same victim or multiple victims manifested by multiple incidents over a prolonged period of time. . . ." CP at 2; RCW 9.94A.535(3)(h)(i). This aggravating factor was based on Pinckney's physical violence towards Eckhouse as well as another woman, Lindsay Prewitt, with whom Pinckney had a relationship in mid-2014. Pinckney was also charged with felony harassment – domestic violence.

Pinckney waived his right to a jury trial, and the matter proceeded to a bench trial. Jackie Collins was one of the State's witnesses. The trial court found Pinckney guilty of second degree assault – domestic violence based on the torture prong. The court also found Pinckney guilty of the aggravating factor on the assault count. The court found Pinckney not guilty of felony harassment, but guilty of the lesser included offense of misdemeanor harassment – domestic violence. As a condition of sentencing, the court ordered that Pinckney have no contact with Eckhouse, Prewitt, or Collins for ten years. Pinckney appealed.

## DISCUSSION

### Sentencing Condition

Pinckney challenges the trial court's sentencing condition barring contact between he and Jackie Collins. Pinckney did not raise this challenge below. Generally, we do not consider arguments raised for the first time on appeal.

3

RAP 2.5(a). A defendant may nevertheless raise an issue for the first time on appeal if it is a manifest error affecting a constitutional right. RAP 2.5(a)(3). The defendant must identify a constitutional error and show that it had practical and identifiable consequences in the proceeding. State v. Grimes, 165 Wn. App. 172, 180, 267 P.3d 454 (2011). Pinckney's briefing lacked argument regarding whether this standard was met, and we agree with the State that it was not. Pinckney did not preserve the issue for appellate review under RAP 2.5(a), and we decline to consider it.

But even if we were to grant review, Pinckney's claim would fail. Trial courts may impose crime-related prohibitions designed to prohibit "conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). The imposition of crime-related prohibitions is reviewed for abuse of discretion. State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). "A trial court abuses its discretion when its decision is manifestly unreasonable or is based on untenable grounds or made for untenable reasons." State v. Adamy, 151 Wn. App. 583, 587, 213 P.3d 627 (2009). Sentencing conditions "are usually upheld if reasonably crime related." State v. Warren, 165 Wn.2d 17, 32, 195 P.3d 940 (2008).

Pinckney asserts that this was not a crime-related prohibition because he and Collins were long time friends and there was no evidence that Collins was a victim in this case. But Collins testified on behalf of the State in Pinckney's trial. Pinckney's criminal history includes seven convictions for assault, and he also beat Collins in the past. Collins belongs to the class of

4

individuals to whom Pinckney poses a threat. Accordingly, preventing contact is "'reasonably necessary to accomplish the essential needs of the State and public order.'" In re Pers. Restraint of Rainey, 168 Wn.2d 367, 377, 229 P.3d 686 (2010) (quoting Warren, 165 Wn.2d at 32).

## Void for Vagueness Challenge

Second degree assault by torture requires that a person knowingly inflict "bodily harm which by design causes such pain or agony as to be the equivalent of that produced by torture...." RCW 9A.36.021(1)(f). The statute does not further define the term "torture." Pinckney argues that this term is unconstitutionally vague as applied to his actions. We disagree.

The constitutionality of a statute is reviewed de novo. State v. Enquist, 163 Wn. App. 41, 45, 256 P.3d 1277 (2011). A statute is unconstitutionally void for vagueness if it "does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed," or it "does not provide ascertainable standards of guilt to protect against arbitrary enforcement." State v. Harrington, 181 Wn. App. 805, 823, 33 P.3d 410 (2014) (quoting State v. Watson, 160 Wn.2d 1, 6, 154 P.3d 909 (2007)). We approach a vagueness challenge with a "strong presumption in favor of the statute's validity." State v. Lee, 82 Wn. App. 298, 309, 917 P.2d 159 (1996) (citing State v. Smith, 111 wn.2d 1, 5, 759 P.2d 372 (1988)). "The party asserting a vagueness challenge bears the heavy burden of establishing that the legislative enactment is unconstitutionally vague beyond a reasonable

doubt." State v. Bradford, 175 Wn. App. 912, 926, 308 P.3d 736 (2013) (citing State v. Maciolek, 101 Wn.2d 259, 263-64, 676 P.2d 996 (1984)).

Where, as here, the challenge does not implicate the First Amendment, the statute is evaluated as applied to the facts of the case. City of Spokane v. Douglass, 115 Wn.2d 171, 182, 795 P.2d 693 (1990). The constitutionality of the statute is determined "by inspecting the actual conduct of the party who challenges the ordinance and not by examining hypothetical situations at the periphery of the ordinance's scope." Id. at 182-83.

Pinckney contends that the term "torture" as used in the second degree assault statute is open to many different questions about its interpretation, and therefore provides no guidance for law enforcement or the trier of fact to prevent arbitrary and discriminatory application. However, "[t]he term 'torture' also may be commonly understood and 'provides notice, with a reasonable degree of certainty, of what conduct is forbidden.'" State v. Russell, 69 Wn. App. 237, 247, 848 P.2d 743 (1993) (quoting State v. Brown, 60 Wn. App. 60, 65-66, 802 P.2d 803 (1990)).

Pinckney waived his right to a jury trial, so there are no jury instructions in the record regarding the trial court's definition of "torture." However, the record amply indicates that the definition of "torture" is not unconstitutional in light of Pinckney's conduct. The court found that Pinckney "grabbed the victim's head and smashed it into the ground," "threatened to beat the victim all day long and said she deserved the whipping," "whipp[ed] Eckhouse across her exposed body" with the belt, "including her shoulder, stomach, legs, hips, and

breasts" and "whipped her back, as well as her legs and thighs." CP at 194-95. The court found that the belt was "shredded from the continual beating." CP at 195. Eckhouse testified that the beating lasted for approximately two hours. The individuals who found Eckhouse initially believed that she had been burned or was wearing a negligee due to the severity and extent of her bruises. The trauma nurse who examined Eckhouse said she was "the most purple patient I have ever examined, ever, and I see a lot of trauma patients. She was literally purple head to toe." VRP (3/31/16) at 279. Pinckney's actions clearly meet the common understanding of what constitutes torture. The statute is not unconstitutionally vague as applied to Pinckney.

## Statement of Additional Grounds

Pinckney raises several additional issues in his pro se statement of additional grounds for review (SAG). None have merit.

Pinckney claims that on thirteen different occasions the trial court abused its discretion and violated his constitutional due process and equal protection rights by granting a continuance and failing to state its reasons. A trial court's decision to grant or deny a motion for a continuance is reviewed for abuse of discretion. State v. Downing, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004). Pinckney provided numerous dates on which he claims these abuses of discretion occurred, but few of these appear in the record before this court, and none appear to contain evidence in support of Pinckney's allegations. To the extent that Pinckney's claims may rely on facts or evidence not in the record

7

before us, his concerns should be raised in a personal restraint petition. State v. Calvin, 176 Wn. App. 1, 26, 316 P.3d 496 (2013).

Pinckney argues that the government committed misconduct in a variety of ways, including unwarranted delay in adding an additional witness, amending the information, and withholding exculpatory evidence. Government misconduct may be grounds for dismissal where the misconduct was prejudicial and materially affected the defendant's right to a fair trial. CrR 8.3(b). Here, the trial court permitted the State to call a witness over defense counsel's objection that the addition was untimely and prejudicial. The trial court ruled that witness could testify for the limited purpose of testifying to the physical condition of the victim prior the time of the incident. The record does not support Pinckney's assertion that that the government committed misconduct, or even if it did, that the misconduct met these standards.

Pinckney, citing Franks v Delaware, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), challenges the validity of the probable cause warrant. He claims that the detective lied to obtain the warrant and that it should not have been issued until exculpatory evidence in the form of a rape kit was recovered. There is no evidence in the record to support Pinckney's claim that the detective lied to obtain a warrant. And given that Pinckney was not charged with a sexual crime, it is very unlikely that the rape kit would have provided exculpatory evidence.

Pinckney argues that the evidence in medical records was insufficient to convict him of the crime of assault in the second degree, and that the trial

court's findings of fact do not support its conclusions of law. Evidence is sufficient to support the conviction if, after viewing it in the light most favorable to the State, a rational trier of fact could find each element of the crime beyond a reasonable doubt. State v. Witherspoon, 180 Wn.2d 875, 883, 329 P.3d 888 (2014). The evidence in this case amply meets this standard, including the medical records and the testimony of witnesses.

Pinckney argues that the trial court erred in refusing to admit exculpatory fingerprint evidence, in violation of his Sixth Amendment right to present evidence connecting another person with the crime charged. A trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. State v. Gunderson, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014). The record shows that Detective James Belford testified at a CrR 3.5 hearing that the fingerprints of two individuals were found on a cell phone receipt and price tag belonging to Eckhouse, and that neither individual appeared to be personally connected in any way to Eckhouse, Pinckney, or anyone else in this case. Although the State did not move to exclude the fingerprints, the court ruled that the evidence would not be allowed for the purpose of arguing that the fingerprints point to another suspect. "The general rule is that a defendant cannot introduce evidence that a third party committed the crime for which the defendant is on trial unless there is a sufficient nexus between the third party and the crime." State v. Condon, 72 Wn. App. 638, 647, 865 P.2d 521 (1993). This was not an abuse of discretion.

Lastly, Pinckney assigns two additional errors entitled "defense motion to withdraw" and "unconstitutional sentence." Pinckney provides no argument or facts to support these alleged errors. Although a defendant's SAG is not required to include citations to the record or authorities, it still must "'inform the court of the nature and occurrence of [the] alleged errors, and this court is not required to search the record to find support for the defendant's claims.'" State v. Meneses, 149 Wn. App. 707, 715-16, 205 P.3d 916 (2009) (quoting RAP 10.10(c)).

Affirmed.

WE CONCUR: