[No. 28259-7-III.    Division Three.    February 15, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. ENRIQUE GUZMAN NUNEZ, *Appellant*.

*David L. Donnan* and *Jan Trasen* (of *Washington Appellate Project*), for appellant.

*Steven M. Clem, Prosecuting Attorney*, and *Eric C. Biggar, Deputy*, for respondent.

¶1 SIDDOWAY, J. — Enrique Nunez appeals, following his conviction of possession and delivery of a controlled substance and the imposition of a 24-month sentencing enhancement based on a jury finding that he committed his crimes within 1,000 feet of a school bus route stop. He asks us to vacate the school zone enhancement in light of *State v. Bashaw*, 169 Wn.2d 133, 234 P.3d 195 (2010), because the jury in his case was instructed that unanimity was required to acquit him of the aggravating factor—the same type of instruction given in *Bashaw*. He also assigns error to the trial court's refusal to dismiss charges against him for violation of his CrR 3.3 speedy trial rights and, in a statement of additional grounds, asserts a number of additional challenges to proceedings below. We refuse to review Mr. Nunez's challenge to the jury instruction under RAP 2.5(a) because he failed to object to the instruction in the trial court and we are satisfied that any error is not

manifest constitutional error. We also reject his other claims of error and therefore affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 On March 10, 2009, the State charged Mr. Nunez with delivery of a controlled substance and possession of a controlled substance. He was detained on the charges and arraigned on March 23. In May, the State amended the information to add a special allegation that each of the crimes took place within 1,000 feet of a school bus zone or school.

¶3 At arraignment, the court noted that speedy trial expired on May 22, 2009. On April 22, the court set the trial date for May 28 based on a defense request for a continuance. The court recalculated speedy trial at June 29, 2009. On May 26, the parties indicated they were ready for trial on May 28.

¶4 The trial did not begin on May 28. On June 3, the court reset the trial for June 11. On June 8, the parties informed the court they were ready for trial on June 11. On June 18, trial was continued to June 25.

¶5 The trial did not occur on June 25. There is no record of a hearing on that date. However, minutes from a June 29 hearing indicate that the case was continued due to the State's involvement in another trial. Clerk's Papers (CP) at 78. In its motion for a continuance, the prosecutor explained:

> The State was involved in a trial last week, which I indicate[d] ultimately settled, but it didn't settle until the jury was here. . . . I've been handling the prosecution throughout in that case, and so this matter had to have been bumped as a result of my schedule conflict.

Report of Proceedings (RP) (June 29, 2009) at 3.

¶6 Over Mr. Nunez's objection, the court continued the trial to July 1, stating:

> [T]he Court believes that as the prosecution was involved in a trial last Thursday when Mr. Nunez was scheduled to go to

trial, that case had been pending for about a year. . . . [I]t was the type of case that, by statute, the Court can't continue as a result of the child victim, and Mr. Biggar, who's the Prosecutor in both cases, was involved. So, under the circumstances, the Court believes that there is good cause to continue a minimal time, which is [the] day after tomorrow, his speedy trial into Wednesday.

*Id.* at 3-4.

¶7 When defense counsel asked the court to calculate the new speedy trial date, the judge responded:

Well, I'm not sure. As I understand the statute, as he's incarcerated, the Court has another 14 days under [CrR] 3.3(g). And, candidly, I haven't even really looked at his file to see if there's other reasons to continue under 3.3(e), but under 3.3(g), the Court has 14 days.

*Id.* at 4.

¶8 On July 1, the day of trial, defense counsel again objected to the continuance based on a speedy trial expiration date of June 29. RP (July 1, 2009) at 47. The court overruled the objection and the case proceeded to trial. *Id.* A jury found Mr. Nunez guilty of both charges as well as the special verdicts. At sentencing, the court dismissed the special verdict on count 1.

¶9 After this appeal had been fully briefed, the Washington Supreme Court issued its decision in *Bashaw*, holding that it was error to instruct a jury that its decision as to the existence of an aggravating sentencing factor must be unanimously "yes" or "no." Because a similar instruction had been given with respect to the school bus route stop enhancements imposed in this case, Mr. Nunez moved to supplement his brief in order to raise this additional assignment of error. The motion was granted.

## ANALYSIS

ALLEGED INSTRUCTIONAL ERROR

¶10 Mr. Nunez asks us to vacate his sentencing enhancement based on the Supreme Court's decision in *Bashaw*, 169 Wn.2d 133.

¶11 *Bashaw* reversed this court's decision in *State v. Bashaw*, 144 Wn. App. 196, 201, 182 P.3d 451 (2008), in which we addressed a challenge to a concluding instruction directing the jury that in deciding whether the defendant committed the aggravating factor of selling a controlled substance within 1,000 feet of a school bus route stop, " 'all twelve of you must agree on the answer to the special verdict' "—an instruction that Ms. Bashaw contended wrongly required unanimous agreement in order to answer "no," contrary to *State v. Goldberg*, 149 Wn.2d 888, 72 P.3d 1083 (2003). We held that the instruction in Ms. Bashaw's case, like the pattern instruction then in use, correctly required unanimity to convict or acquit a defendant of an aggravating factor, clarifying *Goldberg* as we understood it; alternatively, we held that the error was harmless. The Supreme Court accepted review and reversed, stating the rule of *Goldberg* as follows:

> [A] unanimous jury decision is not required to find that the State has failed to prove the presence of a special finding increasing the defendant's maximum allowable sentence. A nonunanimous jury decision is a final determination that the State had not proved the special finding beyond a reasonable doubt.

*Bashaw*, 169 Wn.2d at 146.

¶12 The concluding instruction in Mr. Nunez's case, like the instruction in *Bashaw*, erroneously required unanimity to acquit Mr. Nunez of the aggravating factors of possessing and delivering a controlled substance within 1,000 feet of a

school bus route stop.[1] But Mr. Nunez did not object to the concluding instruction given by the trial court. RP (July 1, 2009) at 241-43.

¶13 RAP 2.5(a) states the general rule for appellate disposition of issues not raised in the trial court: appellate courts will not entertain them. *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988). As pointed out in *Scott*, the general rule has specific applicability with respect to claimed errors in jury instructions in criminal cases through CrR 6.15(c), requiring that timely and well stated objections be made to instructions given or refused " 'in order that the trial court may have the opportunity to correct any error.' " *Id.* at 686 (quoting *City of Seattle v. Rainwater*, 86 Wn.2d 567, 571, 546 P.2d 450 (1976)).

¶14 Mr. Nunez does not suggest an exception to RAP 2.5(a) that warrants raising the form of special verdict in his case for the first time on appeal. He generally cites Washington Const. art. I, §§ 21 and 22 in support of his assignment of error, however. In addition, the Supreme Court's decision in *Bashaw* applied constitutional harmless error analysis, a matter we discuss below. "[M]anifest error affecting a constitutional right" is one of the exceptions that can be raised for the first time on appeal. RAP 2.5(a)(3). We therefore consider whether the giving of an instruction that requires a jury to deliberate to unanimity in order to acquit a defendant of an aggravating factor constitutes manifest constitutional error.

¶15 To demonstrate that an error qualifies as manifest constitutional error, an appellant must " 'identify a constitutional error and show how the alleged error actu-

---

[1] Instruction 15 explained that the jury would be given special verdict forms, to be completed if it found Mr. Nunez guilty of the crimes charged and stated, in pertinent part:

> Because this is a criminal case, all twelve of you must agree in order to answer the special verdict forms. In order to answer the special verdict forms "yes", you must unanimously be satisfied beyond a reasonable doubt that "yes" is the correct answer. If you unanimously have a reasonable doubt as to this question, you must answer "no".

CP at 30.

ally affected the [appellant's] rights at trial.'" *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009) (alteration in original) (quoting *State v. Kirkman*, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007)). We do not assume that an error is of constitutional magnitude. *Id.* (citing *Scott*, 110 Wn.2d at 687). We look to the asserted claim and assess whether it implicates a constitutional interest as compared to another form of trial error. *See id.*

¶16 If the claimed error is of constitutional magnitude, we determine whether the error is manifest. "'"Manifest" in RAP 2.5(a)(3) requires a showing of actual prejudice.'" *Id.* at 99 (quoting *Kirkman*, 159 Wn.2d at 935). To demonstrate actual prejudice, there must be a "'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.'" *Id.* (internal quotation marks omitted) (quoting *Kirkman*, 159 Wn.2d at 935). In determining whether the error was identifiable, the trial record must be sufficient to determine the merits of the claim. *Id.* "'If the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest.'" *Id.* (quoting *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995)).

¶17 The determination whether the error is manifest and actual prejudice has been shown is a different question from whether the error was harmless; harmless error analysis takes place only after it has been determined that the trial court committed manifest constitutional error. As explained in *O'Hara*:

> In order to ensure the actual prejudice and harmless error analyses are separate, the focus of the actual prejudice must be on whether the error is so obvious on the record that the error warrants appellate review. It is not the role of an appellate court on direct appeal to address claims where the trial court could not have foreseen the potential error or where the prosecutor or trial counsel could have been justified in their actions or failure to object. Thus, to determine whether an error is practical and identifiable, the appellate court must place

itself in the shoes of the trial court to ascertain whether, given what the trial court knew at the time, the court could have corrected the error.

*Id.* at 99-100 (footnote and citations omitted).

¶18 We first look at Mr. Nunez's asserted claim and assess whether, if correct, it implicates a constitutional interest as compared to another form of trial error. His claim is that the trial court's giving of the challenged instruction denied him the chance that the jury would refuse to find the aggravating factors had it suspended its deliberations short of reaching unanimous agreement.

¶19 Instructional error is not automatically constitutional error. In *O'Hara*, the Supreme Court held that the failure of the trial court to provide a complete definition of "malice"—with the trial court excluding the aspect of malice arguably most supportive of Mr. O'Hara's theory of self-defense (*see id.* at 110 (Sanders, J., dissenting))—did not constitute an error of constitutional dimension. *Id.* at 105. Mr. O'Hara did not point to an explicit constitutional provision. *Id.* He argued that the instruction generally violated his due process rights by relieving the State of its burden of proof, but the court observed that " 'the constitution only requires the jury be instructed as to each element of the offense charged, and the failure of the trial court to further define one of those elements is not within the ambit of the constitutional rule.' " *Id.* (quoting *State v. Fowler*, 114 Wn.2d 59, 69-70, 785 P.2d 808 (1990) (citing *Scott*, 110 Wn.2d at 689)), *overruled on other grounds by State v. Blair*, 117 Wn.2d 479, 816 P.2d 718 (1991).

¶20 The trial court's failure to instruct the jury that it could acquit Mr. Nunez of the aggravating factor nonunanimously is likewise not an error of constitutional dimension. Mr. Nunez has not identified a constitutional provision violated by the trial court's use of the concluding instruction. While he makes a general reference to Washington Const. art. I, §§ 21 and 22, there is no textual support in either provision for a right to nonunanimous acquittal of

any criminal charge or consequence. Washington Const. art. I, § 21, providing that "[t]he right of trial by jury shall remain inviolate," preserves the right to a jury trial as it existed at common law when § 21 was adopted, which includes, in criminal cases, a right to a unanimous jury verdict in order to convict. *See, e.g., State v. Stephens*, 93 Wn.2d 186, 190, 607 P.2d 304 (1980). Washington Const. art. I, § 22 is comparable to the Sixth Amendment to the United States Constitution and adds nothing with respect to the extent of agreement required for acquittal, providing with respect to jury trial only that "[i]n criminal prosecutions the accused shall have the right ... to have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed."

¶21 No constitutional issue is raised under the Sixth or Fourteenth Amendments to the United States Constitution. *See Johnson v. Louisiana*, 406 U.S. 356, 363, 92 S. Ct. 1620, 32 L. Ed. 2d 152 (1972) (noting that when a jury in a federal court, which operates under a unanimity rule, cannot agree unanimously upon a verdict the defendant is not acquitted—which he would be, if nonunanimity could operate as acquittal—but is given a new trial); *id.* at 395 (Brennan, J., dissenting) (expressing concern about nonunanimous decisions, where jurors often enter deliberations with strong opinions on the merits and "[i]f at that time a sufficient majority is available to reach a verdict, those jurors in the majority will have nothing but their own common sense to restrain them from returning a verdict before they have fairly considered the positions of jurors who would reach a different conclusion").

¶22 Our Supreme Court did not cite a constitutional basis for its decision in *Bashaw*, 169 Wn.2d 133; to the contrary, both *Bashaw* and the court's earlier decision in *State v. Labanowski*, 117 Wn.2d 405, 816 P.2d 26 (1991) recognize that it is common law rule, not the constitution, that permits Washington juries to reject sentence enhancements or higher degree offenses less than unanimously. *Labanowski* involved a choice as to the procedure to be

followed by juries considering lesser included or lesser degrees of charged crimes: How should a trial judge instruct a jury regarding its ability to render a verdict on a lesser offense when it is unable after due deliberation to agree on a verdict for the greater offense? 117 Wn.2d at 418. The court considered two predominant forms of instruction given in other jurisdictions: the "acquittal first" instruction, by which a jury is required to reach unanimous agreement on the charged crime before considering a lesser crime as an alternative, and the "unable to agree" instruction, by which a jury, after full and careful consideration, is allowed to quit deliberating toward unanimity on the charged crime and proceed to agreement on the lesser offense. *Id.* at 418-20.

¶23 The defendants in the consolidated cases decided in *Labanowski* argued that an "acquittal first" instruction "has a significant impact on a defendant's right to trial by jury and on the reasonable doubt standard," and the court ultimately rejected "acquittal first" instruction, concluding that the "unable to agree" type of instruction correctly stated the law in Washington and should be used in the future. *Id.* at 423. The court nonetheless rejected defense arguments that an "acquittal first" instruction violated any constitutional right. It noted that "[n]umerous cases . . . have held that the 'acquittal first' instruction does not impinge on a defendant's constitutional rights." *Id.* It concluded that each instruction had potential advantages and disadvantages and that neither was wrong as a matter of law. *Id.* at 424.[2]

¶24 *Bashaw* did not identify a constitutional provision violated by the concluding instruction challenged in that

---

[2] Federal courts have similarly and consistently held that any error in instructing a jury to deliberate to unanimity on a greater offense before moving on to a lesser offense is not of constitutional dimension; it is therefore not subject to appeal unless it was timely objected to in the trial court. *See Catches v. United States*, 582 F.2d 453, 459 (8th Cir. 1978); *United States v. Harvey*, 701 F.2d 800, 806 (9th Cir. 1983), *overruled on other grounds by United States v. Chapel*, 55 F.3d 1416 (9th Cir. 1995); *United States v. Cardinal*, 782 F.2d 34, 36-37 (6th Cir.), *cert. denied*, 476 U.S. 1161 (1986); *Zuern v. Tate*, 101 F. Supp. 2d 948, 985 (S.D. Ohio 2000), *rev'd in part on other grounds*, 336 F.3d 478 (6th Cir. 2003), *cert. denied*, 540 U.S. 1198 (2004).

case. Rather, it noted that the rule that a jury can reject an aggravating factor less than unanimously is not compelled by constitutional provisions against double jeopardy, "but rather by the common law precedent of this court, as articulated in *Goldberg*." 169 Wn.2d at 146 n.7. The court characterized the rule adopted in *Goldberg* and reinforced in *Bashaw* as serving policies of judicial economy and finality, as with the procedural instruction for the jury arrived at in *Labanowski*. *Id.* at 146-47.

¶25 As we reviewed the decisions for any constitutional mooring for the rule announced in *Goldberg*, we find, at most, the statement in *Goldberg* that "[t]he right to a jury trial includes the right to have each juror reach his or her own verdict 'uninfluenced by factors outside the evidence, the court's proper instructions, and the arguments of counsel,'" *Goldberg*, 149 Wn.2d at 892 (quoting *State v. Boogaard*, 90 Wn.2d 733, 736, 585 P.2d 789 (1978)), and the statement in *Bashaw* that the court has "recognized a defendant's ' "valued right" to have the charges resolved by a particular tribunal.'" *Bashaw*, 169 Wn.2d at 146 (quoting *State v. Wright*, 165 Wn.2d 783, 792-93, 203 P.3d 1027 (2009) (quoting *Arizona v. Washington*, 434 U.S. 497, 503, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978))). But *Goldberg* and *Bashaw* explicitly did not turn on any finding of jury coercion. *Id.* ("In resolving the appeal in *Goldberg*, we rejected the parties' framing of the issue as one of jury coercion." (citing *Goldberg*, 149 Wn.2d at 893)). They turned on a policy choice that the court acknowledged could be reasonably resolved either way. In short, the aggravating factors in Mr. Nunez's case were imposed following a deliberative procedure to which he did not object; which no court, state or federal, has found to be unconstitutional or unfair; which has been acknowledged to have procedural advantages; and which, in the lesser included crime con-

text, is preferred by a number of jurists and courts.[3] This is not constitutional error.

¶26 Were the error constitutional, it would not be manifest constitutional error. Instructional errors do not automatically constitute manifest constitutional error. In *O'Hara*, the Supreme Court identified the following instructional errors as examples of manifest constitutional error: directing a verdict, shifting the burden of proof to the defendant, failing to define the "beyond a reasonable doubt" standard, failing to require a unanimous verdict, and omitting an element of the crime charged. 167 Wn.2d at 103. It contrasted these with instructional errors that are not manifest constitutional error: failing to instruct on a lesser included offense and failure to define individual terms. *Id.* It abrogated the suggestion in *State v. LeFaber*, 128 Wn.2d 896, 900, 913 P.2d 369 (1996), repeated in several decisions from the Court of Appeals, that error in instructing on self-defense is automatically manifest constitutional error. 167 Wn.2d at 101.[4]

¶27 The giving of the challenged instruction in Mr. Nunez's case had no practical and identifiable consequences on the record that should have been apparent to the trial court. The instruction used conformed, in material respects, to the pattern concluding instruction then recommended for deliberations on the aggravating factors for controlled substance crimes. *See* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 50.60, at 986 (3d ed. 2008). The jury was able to make all of the findings required, applying the proper burden of proof, under the

---

[3] In the context of a jury's deciding aggravating factors, we found no case outside of the *Bashaw* decisions in which the issue of whether jurors should or should not deliberate to unanimity in order to acquit has been considered.

[4] *O'Hara* reinforces confidence that the statement in *State v. Davis*, 141 Wn.2d 798, 866, 10 P.3d 977 (2000) that "[t]he proposition is well-settled that an alleged instructional error in a jury instruction is of sufficient constitutional magnitude to be raised for the first time on appeal," was not intended to suggest that every claimed instructional error falls within the RAP 2.5(a)(3) exception. We understand the assertion in *Davis* as implicitly limited to challenges that are based upon apparent constitutional grounds, as was the case in *State v. Deal*, 128 Wn.2d 693, 698, 911 P.2d 996 (1996), which *Davis* cites for the proposition.

instructions given. *See O'Hara*, 167 Wn.2d at 108. Without an affirmative showing of actual prejudice, an asserted error is not "manifest" and thus not reviewable under RAP 2.5(a)(3). *McFarland*, 127 Wn.2d at 334.

¶28 Finally, we recognize that it might be asked why, if this instructional error was not manifest constitutional error, the issue was reviewed in *Bashaw*[5] and subjected by the Supreme Court to constitutional harmless error analysis. With respect to the former, it is enough to note that Ms. Bashaw's appeal called into question a pattern instruction and thereby an issue of public interest. The application of RAP 2.5(a) (which provides that the appellate court "may" refuse to review any claim of error not raised in the trial court) is ultimately a matter of the reviewing court's discretion. *Bennett v. Hardy*, 113 Wn.2d 912, 918, 784 P.2d 1258 (1990). It was our prerogative to hear and resolve the issue in Ms. Bashaw's case notwithstanding her failure to preserve the error and the Supreme Court's prerogative to accept review and correct this court when we misapprehended *Goldberg*.

¶29 With respect to the constitutional harmless error analysis applied by the Supreme Court in *Bashaw*, we point out that the fact that constitutional harmless error analysis was applied—the fourth step in what is ordinarily a four-step analysis—is, in the end, no more compelling than the fact that the first three steps were not. *See State v. Lynn*, 67 Wn. App. 339, 345, 835 P.2d 251 (1992).[6] We view our conclusion that any instructional error is not constitutional

---

[5] Ms. Bashaw had not objected to the instruction given in her case, either. *See* 144 Wn. App. at 199.

[6] Recommending the following four-step analysis: "First, the reviewing court must make a cursory determination as to whether the alleged error in fact suggests a constitutional issue. Second, the court must determine whether the alleged error is manifest. Essential to this determination is a plausible showing by the defendant that the asserted error had practical and identifiable consequences in the trial of the case. Third, if the court finds the alleged error to be manifest, then the court must address the merits of the constitutional issue. Finally, if the court determines that an error of constitutional import was committed, then, and only then, the court undertakes a harmless error analysis." *Lynn*, 67 Wn. App. at 345.

error, and certainly not manifest constitutional error, as compellingly supported by the rationale of *Labanowski*, *Goldberg*, *Bashaw*, and the well-established meaning of RAP 2.5(a)(3). Therefore, while we have carefully considered that aspect of the court's decision, we are ultimately not deterred by the fact that constitutional harmless error analysis was applied, although arguably not required, in *Bashaw*, 169 Wn.2d 133.

¶30 Because we are satisfied that the claimed instructional error was not manifest constitutional error, we will not review it for the first time on appeal.

¶31 Mr. Nunez's judgment and sentence is affirmed.

¶32 The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions. RCW 2.06.040.

KORSMO, A.C.J., and SWEENEY, J.

Review granted at 172 Wn.2d 1004 (2011).