IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

STATE OF WASHINGTON,        )
                           )        No.  39685-1-III
            Respondent,     )
                           )
    v.                      )
                           )        UNPUBLISHED OPINION
LAURA ELAINE MCCARVER,      )
                           )
            Appellant.      )
                           )

FEARING, J. — In this appeal, Laura McCarver claims the superior court violated her due process rights because she lacked the opportunity to cross-examine State witnesses and because the court considered unadmitted hearsay evidence when revoking her Drug Offender Sentencing Alternative (DOSA).  We reject the appeal because McCarver, before the superior court, never challenged the hearsay evidence or complained about the opportunity to question witnesses.  Nor does McCarver show manifest constitutional error.

FACTS

This appeal arises from Laura McCarver's DOSA.  On January 13, 2022, McCarver pled guilty to assault of a child in the third degree, with a special domestic

violence allegation, as an accomplice (count I); first-degree criminal mistreatment (count II); two counts of criminal contempt for violating her release conditions (counts III and IV); and delivery of methamphetamine as an accomplice (count V). The underlying facts behind the crimes bear little relevance to this appeal. McCarver had no prior felony convictions. The State agreed to recommend a prison-based DOSA.

During the 2022 sentencing hearing, the State's attorney commented that Laura McCarver, the mother of children, suffers from controlled substance dependency and she acknowledges a need for treatment. Defense counsel echoed that McCarver would benefit from treatment. McCarver personally added:

> There's been a period in my life that I've struggled with addiction, which has led me to always not making the right choices. But I do know for my future and for my children's future that it's work that gives opportunity to improve myself.
> I really want to take this time and focus on a new drug treatment or mental health services so I can become the best version of myself and the best mother to my children, who deserve it.

Report of Proceedings (RP) at 31.

The superior court accepted the State's recommendation and imposed a DOSA sentence consisting of three years of prison followed by three years of community custody under the supervision of the Department of Corrections (DOC). When imposing the term, the court intoned:

> Ms. McCarver, you may notice already—you probably do from talking to [your lawyer], but hopefully you understand that the standard range on Count 2 was up to 82 months. And if—I mention this just because

when a—when one dodges a bullet, it's useful to know what kind of bullet. That was an 82-month bullet that you dodged by getting this DOSA.

RP at 36-37.

On December 1, 2022, DOC, apparently early, released Laura McCarver from prison, at which time she began the community custody sentence segment. Her community custody conditions included remaining free from controlled substances and submitted to urinalysis (UA).

According to DOC records, Laura McCarver submitted a urinalysis on January 5, 2023, which tested positive for methamphetamine. Another UA, submitted on January 17, 2023, also tested positive for methamphetamine. McCarver admitted to using the drug in both instances. In response, DOC placed McCarver in a thirty-day inpatient drug treatment facility, from which she was released on February 23, 2023.

On March 15, 2023, Laura McCarver submitted another UA, which again tested positive for methamphetamine. Nevertheless, this time, she denied using any controlled substances. On March 21, 2023, McCarver provided two UAs, one at 11:00 a.m. and another at 12:40 p.m. The first urinalysis tested positive for methamphetamine and the second for opiates. McCarver again denied using controlled substances.

DOC sent the two March 15 UA samples to a laboratory for further testing and confirmation of the presence of controlled substances. On March 22, 2023, DOC submitted a report titled "Court – Special" to the Douglas County Superior Court and

Prosecuting Attorney's Office, outlining McCarver's repeated failure to comply with the terms of her DOSA sentence.

PROCEDURE

On March 22, 2023, the State moved to revoke Laura McCarver's DOSA. The UA results had yet to be confirmed by the laboratory.

At the initial DOSA revocation hearing on April 3, 2023, the State's attorney informed the court that Laura McCarver had took controlled substances since her emancipation from incarceration in December 2022 and thus serially violated the terms of her release. The State added that, after a second violation, DOC enrolled her in a month-long inpatient treatment program, but she continued to take unlawful substances after release from the treatment. The court inquired about whether the State had received results from the independent lab testing. The State answered that a DOC supervisor would confirm the results later that day. The State argued, however, that DOC's test results met the evidentiary standard to revoke McCarver's DOSA sentence.

At the April 3, 2023 hearing, Laura McCarver's counsel requested a continuance in order for the parties to receive the additional urinalysis results. The court agreed to continue the hearing for a week.

By April 11, 2023, when the DOSA revocation hearing resumed, the State had yet to receive test results from the independent laboratory. At the resumed hearing, the State recounted the details of Laura McCarver's convictions and her actions since her release:

4

On January 5th, 2023, she [Laura McCarver] tested positive for methamphetamines when she went to her DOC officer. There was a sanction, which required her to report twice weekly for a period of time. And then on January 17, 12 days later, she tested positive for methamphetamine again when she went to DOC.

And on January 24, she went immediately to ABHS inpatient treatment—I assume in Wenatchee—and was released from there after about 30 days on February 23rd, 2023.

[Defense counsel] was kind enough to provide us with the evaluation and monthly reports from ABHS/The Center for Drug and Alcohol Treatment, which documents her history there.

….

In—so February 23rd, she was released. And on March 15, she was positive for methamphetamines again. This time she went to jail for three days as a part of a sanction. She was once again positive for methamphetamine and opiates on March 21st. So she had been in custody presumably from March 15 or 16 and then got out and then on March 21st, was positive.

She started her outpatient treatment specifically on March 1st. And on March 13, she was absent and she had an individual session on March 14. And I say these dates because on March 15, she had a dirty UA. And that's the one that just—just before she went to jail for three days.

RP at 57-58.

At the April 11 hearing, the State asked the superior court to revoke the DOSA sentence because of the many positive urinalysis test results. According to the State, Laura McCarver had chosen to live a lifestyle that entailed drug abuse.

During the April 11 revocation hearing, the State read from Laura McCarver's drug treatment assessment and progress report from April 2023. In response, defense counsel moved for admission of the full report rather than the State selecting favorable portions of the report. The superior court admitted the report as "Exhibit" 1.

5

At the April 11, 2023 revocation hearing, Laura McCarver testified under oath. She admitted to using controlled substances on two occasions since her release from incarceration. She denied taking drugs after her inpatient treatment.

Defense counsel argued that the treatment report lacked any reference to Laura McCarver being noncompliant with treatment. Counsel added that the court should revoke the DOSA sentence only if McCarver disobeyed treatment instructions. Counsel added that the State had yet to receive the independent lab test results for the last two urinalyses. Because McCarver denied use after release from treatment, counsel wished to review the laboratory results in case DOC testing resulted in false positives.

As in the April 3 hearing, the superior court, during the April 11 hearing, inquired about when the State would receive the disputed UA results. The State's attorney answered that he had previously emailed the DOC supervisor to ask about the results. The superior court suggested that the prosecutor call the supervisor directly. The court took a recess for the call. Apparently, the State's attorney did not reach the DOC supervisor or the supervisor related that DOC had yet to receive the results.

On April 11, 2023, the superior court continued the revocation hearing again. The court remarked:

> It's my understanding that DOC expects to receive those [laboratory] results any day. The Court would very much like to have those results in hand to make the best decision it can. There are a couple of years riding on this.

RP at 75.

DOC received the independent lab test results between April 11 and April 19.  On April 19, 2023, the superior court reconvened the revocation hearing.  DOC Officer Marge Jackson attended the hearing remotely on behalf of DOC.  The State writes in its brief that two DOC officers attended the hearing, but the record does not confirm the presence of another officer.

During the April 19 hearing, the State repeated the background of the prosecution of Laura McCarver and her use of controlled substances during the prosecution and after release from prison.  The State then marked as Exhibit 2 the urinalysis results from March 15, 2023, showing the presence of methamphetamine in McCarver's urine.  The State also marked as Exhibit 3 the urinalysis report from a sample taken on March 21, 2023 at 11:00 a.m.  The urine tested positive for methamphetamine and amphetamine.  Finally, the State marked as Exhibit 1 a urinalysis report from March 21, 2023 at 12:40 p.m., one hour and forty minutes after the urinalysis referenced in Exhibit 1.  The 12:40 urinalysis report confirmed the presence of codeine.  The State theorized about the chronology of McCarver's drug use and speculated she may have submitted another individual's urine during one of the two tests.  Substituting another's urine also constitutes a violation of her community custody and DOSA sentence.  The State did not ask the superior court to admit identifications 1 or 3 as exhibits.

7

The State's attorney commented that he obtained the results from the DOC supervisor. The supervisor, however, did not testify.

At the April 19 hearing, defense counsel urged:

> But Judge, look further into the report. If there's also an allegation that she's tampering, look at the basic alteration check on each report— normal, normal, normal.

RP at 89. The State countered:

> Your Honor, on 3/22/23, before the UAs were back from the lab for confirmation of their testing, this is what Mr. Morales, the DOC officer wrote—McCarver continues to consume controlled substances despite additional inpatient treatment and continues to have a complete disregard of her court order conditions when it comes to the condition to not use controlled substances. McCarver has been reminded in the past of how she's placing herself in jeopardy of a reclassification of her DOSA sentence.

RP at 90.

During the course of either the April 11 or April 19 hearings, Laura McCarver did not ask to examine any state officer. McCarver did not object to the court reviewing Exhibits 2 or 3. McCarver did not assert that the urinalysis reports constituted hearsay that should not be considered by the court in its ruling. McCarver's counsel encouraged the court to review carefully one of the reports. McCarver never complained that the State failed to give her advance copies of any of the reports or records shown to the court. McCarver had asked for and had been granted continuances for the laboratory reports to arrive.

8

The superior court revoked Laura McCarver's DOSA sentence and imposed a 72-month sentence. In its written order, the court wrote that it considered the State's motion and supporting affidavit, a report from DOC Officer Salvador Morales attached to the affidavit, the three UA results marked as exhibits but not formally admitted as exhibits, an email from McCarver's Department of Children, Youth, and Families social worker, and a progress report from her primary substance abuse treatment provider. The court admitted as Exhibit 1 the latter report.

## LAW AND ANALYSIS

On appeal, Laura McCarver asks that this court remand her prosecution for a new DOSA revocation hearing because the State violated her due process rights during the revocation process by not affording her an opportunity to cross-examine State witnesses and because the superior court relied on unadmitted hearsay evidence. McCarver, in essence, asserts that the State presented insufficient evidence to revoke her special sentence because no admitted exhibit confirmed her abuse of drugs after her release from inpatient treatment.

We reject Laura McCarver's arguments because she did not assert any of the arguments during the April 11 or 19 hearings. Instead, she invited the court to review in depth one admitted exhibit and asked for delays so that the court could consider the other unadmitted exhibits. McCarver never asked to question any DOC employee. She thus waived the right to assert error on appeal.

9

A party may not generally raise a new argument on appeal that the party did not present to the trial court. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995); *State v. O'Hara*, 167 Wn.2d 91, 97–98, 217 P.3d 756 (2009). A party must inform the court of the rules of law it wishes the court to apply and afford the trial court an opportunity to correct any error. *Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983); *State v. O'Hara*, 167 Wn.2d 91, 98 (2009).

RAP 2.5(a) formalizes this fundamental principle of appellate review. The first sentence of the rule reads:

> Errors Raised for First Time on Review. The appellate court may refuse to review any claim of error which was not raised in the trial court.

(Boldface omitted). No procedural principle is more familiar than that a constitutional right, or a right of any other sort, may be forfeited in criminal cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it. *United States v. Olano*, 507 U.S. 725, 731, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993); *Yakus v. United States*, 321 U.S. 414, 444, 64 S. Ct. 660, 88 L. Ed. 834 (1944). Good sense lies behind the requirement that arguments be first asserted at trial. The prerequisite affords the trial court an opportunity to rule correctly on a matter before it can be presented on appeal. *State v. Strine*, 176 Wn.2d 742, 749, 293 P.3d 1177 (2013). There is great potential for abuse when a party does not raise an issue below because a party so situated could simply lie back, not allowing the trial court to avoid the potential prejudice, gamble

10

on the verdict, and then seek a new trial on appeal. *State v. Weber*, 159 Wn.2d 252, 271–72, 149 P.3d 646 (2006); *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012).

The theory of preservation by timely objection also addresses several other concerns. The rule serves the goal of judicial economy by enabling trial courts to correct mistakes and thereby obviate the needless expense of appellate review and further trials, facilitates appellate review by ensuring that a complete record of the issues will be available, and prevents adversarial unfairness by ensuring that the prevailing party is not deprived of victory by claimed errors that he had no opportunity to address. *State v. Strine*, 176 Wn.2d 742, 749–50 (2013); *State v. Scott*, 110 Wn.2d 682, 688, 757 P.2d 492 (1988).

Countervailing policies support allowing an argument to be raised for the first time on appeal. For this reason, RAP 2.5(a) contains a number of exceptions. RAP 2.5(a) allows an appellant to raise for the first time a "manifest error affecting a constitutional right," an exception on which a criminal appellant commonly relies. Constitutional errors are treated specially under RAP 2.5(a) because they often result in serious injustice to the accused and may adversely affect public perceptions of the fairness and integrity of judicial proceedings. *State v. Scott*, 110 Wn.2d 682, 686–87 (1988). Prohibiting all constitutional errors from being raised for the first time on appeal would result in unjust imprisonment. *State v. Lynn*, 67 Wn. App. 339, 344, 835 P.2d 251 (1992). On the other hand, "permitting *every possible* constitutional error to be raised for the first time on

appeal undermines the trial process, generates unnecessary appeals, creates undesirable re-trials and is wasteful of the limited resources of prosecutors, public defenders and courts." *State v. Lynn*, 67 Wn. App. 339, 344 (1992).

Laura McCarver's due process assertion assuredly implicates a constitutional right. We must decide if the assertion forms "manifest error."

Washington courts and even decisions internally have announced differing formulations for "manifest error." First, a manifest error is one "truly of constitutional magnitude." *State v. Scott*, 110 Wn.2d 682, 688 (1988). Second, perhaps perverting the term "manifest," some decisions emphasize prejudice. The defendant must identify a constitutional error and show how, in the context of the trial, the alleged error actually affected the defendant's rights. *State v. O'Hara,* 167 Wn. 2d 91, 99 (2009); *State v. Scott*, 110 Wn.2d 682, 688 (1998). A third formulation is the facts necessary to adjudicate the claimed error must be in the record on appeal. *State v. McFarland*, 127 Wn.2d 322, 333 (1995); *State v. Riley*, 121 Wn.2d 22, 31, 846 P.2d 1365 (1993). The fourth and best definition for manifest error is the natural meaning of the word "manifest," which is "obvious." *State v. Guzman Nunez*, 160 Wn. App. 150, 158, 248 P.3d 103 (2011), *aff'd and remanded*, 174 Wn.2d 707, 285 P.3d 21 (2012).

Often a court must address the substance of a constitutional argument before determining whether the appellant forwards a manifest constitutional error. We do so

here by outlining the constitutional rights an offender enjoys when the State seeks to revoke community custody or a sentencing alternative.

The revocation of a suspended sentence is not a criminal proceeding. *State v. Dahl*, 139 Wn.2d 678, 683, 990 P.2d 396 (1999); *State ex rel. Woodhouse v. Dore*, 69 Wn.2d 64, 416 P.2d 670 (1966). Accordingly, the due process rights afforded at a revocation hearing are not the same as those afforded at the time of trial. *State v. Dahl*, 139 Wn.2d 678, 683 (1999). An offender facing revocation of a suspended sentence has only minimal due process rights. *State v. Dahl*, 139 Wn.2d 678, 683 (1999); *State v. Nelson*, 103 Wn.2d 760, 763, 697 P.2d 579 (1985). The process governing release revocation is intentionally flexible, permitting the court to consider evidence, including letters, affidavits, and other material otherwise inadmissible in an adversary criminal trial. *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). A revocation hearing need not meet the standards of due process prescribed for the trial of criminal cases. *State ex rel. Woodhouse v. Dore*, 69 Wn.2d 64, 71 (1966).

Individuals facing an alternative sentence revocation are entitled to the same due process protections that the United States Supreme Court has established for probation and parole revocation proceedings. *Morrissey v. Brewer*, 408 U.S. 471 (1972); *In re Personal Restraint Petition of Schley*, 191 Wn.2d 278, 286, 421 P.3d 951 (2018). These rights include:

13

        (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*State v. Dahl*, 139 Wn.2d 678, 683 (1999) (citing to *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)).  The process suffices if the defendant is apprised of the facts on which the contemplated revocation depends and is given a fair opportunity to refute and explain those facts.  *State ex rel. Woodhouse v. Dore*, 69 Wn.2d 64, 71 (1966).  These safeguards exist to ensure that verified facts support a finding of a violation of a term in a suspended sentence.  *In re Personal Restraint Petition of Schley*, 191 Wn.2d 278, 286 (2018); *State v. Dahl*, 139 Wn.2d 678, 683 (1999).

In her brief, Laura McCarver writes that she possesses the "right to notice of the evidence."  Appellant's Brief at 8.  No Washington decision references a right to notice of evidence.  We assume that McCarver does not mean that every bit of evidence must be disclosed in advance because of the burden imposed by such a requirement.  We narrow this right to written notice of the alleged violations and access to the evidence supporting the revocation.  McCarver received notice of the alleged violations.  She also received copies of all of the admitted and nonadmitted reports as to her taking of controlled

14

substances. The court delayed the hearing twice so that McCarver could have access to the laboratory results.

Laura McCarver mentions "unadmitted hearsay evidence." She does not specifically identify the claimed unadmitted hearsay evidence, but we assume she inculpates the urinalysis reports that the State marked but never asked for introduction as Exhibits 2 and 3. McCarver cites no case law that holds that the State or the court violates due process when arguing from or relying on reports never formally admitted, but marked, as trial exhibits. McCarver also cites no case law that prohibits the court from relying on urinalysis reports without authentication from the authors of the reports.

ER 1101(c)(3) suspends the evidence rules from sentencing proceedings, including granting or revoking probation. Thus, the hearsay rules did not apply to Laura McCarver's DOSA revocation hearings. McCarver's superior court did not deny her an evidentiary hearing and did not deny her any constitutional right. McCarver, through counsel chose not to exercise the right of cross-examination and chose not to object to use of reports.

The minimal due process right to confront and cross-examine witnesses is not absolute. *State v. Dahl*, 139 Wn.2d 678, 686 (1999). Courts have limited the right to confrontation afforded during revocation proceedings by admitting substitutes for live testimony, such as reports, affidavits and documentary evidence. *State v. Nelson*, 103 Wn.2d 760, 763 (1985). Laura McCarver emphasizes that the superior court failed to

find good cause before relying on reports not authenticated by the author. In fact, the court should hear hearsay evidence only on good cause to forgo live testimony. *State v. Nelson*, 103 Wn.2d 760, 765 (1985); *State v. Dahl*, 139 Wn.2d 678, 686 (1999). Nevertheless, McCarver never objected to the use of any report because the State did not argue good cause for failing to present someone with percipient knowledge of the test results. McCarver presents no case law that prevents, on constitutional grounds, reliance on hearsay reports commonly reviewed by courts in revocation proceedings.

Laura McCarver astutely argues that she did not object to the hearsay evidence because the evidence was never offered. Nevertheless, McCarver knew that the court would rely on the exhibits. She had asked for a delay so that the court could consider them. McCarver herself sought introduction of Exhibit 1, the treatment report. This exhibit alone established violations of her DOSA.

Laura McCarver complains that she could not cross-examine the authors of the urinalysis reports. But she never sought to examine any of the witnesses. She enjoyed the right to subpoena witnesses, but did not exercise that right. She cites no case law that suggests she has the right to examine a witness not put on the stand by the opposing party or not subpoenaed by the complaining party. McCarver also fails to recognize that she testified in her own behalf. In her own testimony, she admitted use of methamphetamine after release from incarceration.

Laura McCarver relies on *State v. Townsend*, 2 Wn. App. 2d 434, 409 P.3d 1094 (2018). Townsend entailed allegations that an accused violated the terms of a plea agreement. The superior court rescinded the plea agreement at the request of the State without affording Caleb Townsend an evidentiary hearing. This court held that due process demanded an evidentiary hearing.

Unlike in *State v. Townsend*, the superior court granted Laura McCarver an evidentiary hearing. She testified on her behalf. She could have subpoenaed witnesses. She could have admitted exhibits. The superior court postponed the hearing twice at McCarver's request so that the court could review two reports deemed important to McCarver.

Laura McCarver perspicaciously relies on *State v. Townsend* for the proposition that the State must show any waiver of rights to be intelligent, voluntary, and knowing, the standard for waiving constitutional rights. According to McCarver, she did not knowingly and intelligently waive her rights to cross-examine State witness and to the rejection of hearsay. But the State took neither of those rights. She knew in advance of the key documents and could have demanded the appearance of the authors of the reports. She asked that the court review the reports.

This court in *State v. Townsend* distinguished *State v. Nelson*, 103 Wn.2d 760 (1985). *Nelson* involved a probation revocation hearing. The court faced the issue of whether the court may order revocation based upon facts and conclusions contained in

17

written hearsay reports to which the defendant did not object. The Supreme Court held that the proceeding did not violate Lorence Nelson's due process rights.

Laura McCarver distinguishes *State v. Nelson* with the observation that her trial court never admitted the test results as evidence. We, however, distinguish between admitting evidence and admitting exhibits. True, the superior court did not admit Exhibits 2 and 3 as exhibits, but McCarver knew the court intended to rely on the exhibits. To repeat, McCarver asked for the results to be seen by the superior court.

In short, Laura McCarver shows no obvious or prejudicial constitutional error.

CONCLUSION

We affirm the revocation of Laura McCarver's DOSA sentence.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW2.06.040.

_____
Fearing, J.

WE CONCUR:

_____        _____
Lawrence-Berrey, C.J.                    Cooney, J.

18